NIXON v. THE STATE, 2 Smedes & Marshall, 497.

### MURDER.

By the words "speedy trial," as used in the constitution of this state, in guarantying to every one indicted a speedy trial by an impartial jury, is meant a trial regulated and conducted by fixed rules of law; and any delay created by the operation of those rules, is not within the meaning of the constitutional provision.

The statute which gives the accused the right to have a "copy of the indictment and a list of the jurors" at least two entire days before his trial, intends thereby

two entire judicial days. In computing, therefore, the two days, the fraction of the day of its service must be excluded.

Where a prisoner, indicted for murder, cannot, by the rules of law, be put upon his trial until the last judicial day of the then term of the court has partially elapsed, it will not be an infraction of the constitution entitling him to a speedy trial, for the court, upon the application of the state, to postpone the trial to the next term.

The certificate of the clerk of the probate court that the list of jurors, by whom a bill of indictment was found, was drawn in open probate court, in the mode prescribed by law, when the clerk of the circuit court has failed to draw the jurors as required, is evidence to the circuit court that the panel has been properly drawn.

Error to the circuit court of Pontotoc county.

This case is brought, by writ of error, from the judgment of the Hon. Stephen Adams, judge of the ninth judicial district, upon a writ of *habeas corpus*, upon the application of the prisoner, then in custody of the sheriff of Itawamba county. The petition for the writ was dated April, 1843, and stated that the prisoner was in custody, under the charge of having murdered Geo. W. Wiley, late of Pontotoc county. That the indictment was preferred against him, under which he was then in prison, at March term, 1843, of the Pontotoc circuit court; and that he had been imprisoned, under the same charge, since September, 1841; and made the record a part of the petition. The writ was returned with the prisoner on the 19th April, 1843, and the investigation was held in Fulton, in Itawamba county.

An indictment was found against the prisoner by the grand jury of Pontotoc county, November 16th, 1841, for the murder of George W. Wiley, on which the defendant was arraigned before the circuit court on the 16th day of November, 1841, and to which he pleaded not guilty. At the same term of the court, on the showing and application of the defendant, the *venue* was changed, by order of the court, to the county of Itawamba, to answer the charge on the third Monday of April, 1842, at which term the cause was continued, on the application of the prisoner, until the next term of the court. At that term the defendant moved to quash the indictment. This motion was sustained, and the indictment quashed, and defendant removed to the county of Pontotoc, to answer the charge at the then next April term.

The certificate of the clerk of the probate court, that the clerk of the circuit court, the sheriff and the judge of the pro-

bate court, drew the jurors in open probate court, at the November term, 1842, of said court, is filed with the record, and appears as part of it. The jurors thus drawn found the second indictment for the same offense, March term, 1843, of the circuit court of Pontotoc county. On the 23d March, 1843, defendant was arraigned on said indictment, and again pleaded "not guilty," and demanded his trial, but refused to waive his right to a copy of the *venire* and indictment for two entire days; and there not being sufficient time remaining of the term, his motion, for that reason, was overruled. The defendant was in the custody of the sheriff during the entire term of the court. The *venue* was, on application of defendant, again changed to Itawamba county, no affidavit or other cause appearing of record.

Before the trial, defendant moved to quash the indictment, because it was improperly found, and by an irregular grand jury. He moved, also, to have the case stricken from the docket of that county for want of jurisdiction, no affidavit for the change of *venue* having been filed. The motion was overruled. On the trial under the writ of *habeas corpus,* no other evidence was adduced than the record of the proceedings in the circuit court. The application for discharge was overruled, and the prisoner remanded.

*Davis* for the prisoner.

Cited the 10th section of the first article of the constitution, which declares, " that in all prosecutions, by indictment or otherwise, the accused shall have a speedy and public trial by an impartial jury of the county where the offense was committed; and insisted that it was imperative in its mandates, absolute in its effect upon the action, both of the courts and the legislature, and that no discretion was vested by it, either in the judiciary or in the legislature.

If the circuit courts can absolutely refuse a trial at one term, can they not do so for ten, or any number of terms? If they can commence the exercise of a discretion, what power of the government can limit them? what power restrain them? None but the power which gave them existence, and it has already fixed that restraint by withholding the power. That power has,

in effect, said, that this is a substantial power, intended for the protection of the citizen, and that one refusal by the court to grant a trial, is a failure to furnish a speedy and impartial trial, in accordance with the spirit of the constitution, and for which the prisoner shall be discharged.   Green v. Robinson, 5 How. 100.   The record shows default and unjustifiable delay on the part of the state.   After eighteen months' confinement of the prisoner in a dungeon, the proceedings against him by the prosecution are found by the court to be so irregular and illegal, that it is constrained to quash the whole proceedings.   The whole fault was on the part of the state, whereby it failed to furnish the prisoner that speedy trial guaranteed to him by the constitution, and the defendant should have been then discharged.   But oppression does not stop at this point; he is remanded to the jail of Pontotoc county for further proceedings.

Three years have now been passed by the prisoner in chains and a dungeon.   The question is, shall he be discharged? There is not in the record anything to be found which shows the jury to have been drawn in accordance with the statute. How. & Hutch., 491, sec. 46.   Neither of the modes prescribed in the first part of that section was pursued.   In default of pursuing these modes, another is prescribed, to wit: they shall be drawn by the clerk and sheriff in presence of the probate judge.   This the probate clerk testifies has been done; but his certificate is a nullity, because he has no authority in law to make it.   Hence we insist that the prisoner is illegally detained, and ought to be discharged.

*John D. Freeman,* attorney general.

THACHER, J.:

This was a writ of error from the judgment of the judge of the ninth judicial district, upon an investigation, by virtue of a writ of *habeas corpus.*

The plaintiff in error is under indictment for murder.   He claimed his discharge upon two grounds: that he had been deprived, through the default of the state, of his constitutional privilege of a speedy trial; and that the indictment by process, under which he was now held in imprisonment, is null and void.

One who is prosecuted by indictment or information has, by the constitution, his right to a speedy and impartial trial. He shall not be unnecessarily hindered and delayed, in his efforts to relieve himself from the burden of an onerous charge of crime. But the constitution also declares that he shall not be deprived of his life or liberty, but by due course of law. Const., art. 1, § 10. Delays growing out of the established mode of proceeding, which has been so established by law, equally for the protection of the accused, and to accomplish the design of the scheme of laws, are evils, necessarily attendant upon all human systems of jurisprudence. They are evils to which all may be subjected alike, and which constitute a part of the price paid for the advantages, far greater in proportion, thereby derived. By a speedy trial is then intended a trial conducted according to fixed rules, regulations, and proceedings of law, free from vexatious, capricious, and oppressive delays, manufactured by the ministers of justice.

In examining the record, we can see but one cause of delay, which did not originate, directly and immediately, from the accused himself; and that exception seems to be the one most urgently pressed upon this court. The state of facts relied upon most forcibly in the argument, as exemplifying the state's default was, that the pending indictment was found by the grand jury of Pontotoc county, on Tuesday, the 21st day of March, 1843; that the accused was arraigned thereon on Thursday, the 23d day of the same month, and plead thereto; and that he thereupon demanded his trial, which was refused him, as he declined to waive his statutory right to a copy of the indictment for two entire days before his trial. H. & H., 667, § 15.

The trial, under the circumstances, could not have taken place at that term of the court. The Circuit Court of Pontotoc county could continue in session six judicial days, and no longer. Laws of 1842, 221, § 2. The statute gave the accused a right to an examination of the indictment "at least two entire days before the trial." The service of copy must have been made some time on Thursday, and he would have been entitled to the days of Friday and Saturday for its examination, with the advice of counsel. The statute intends two entire judicial days. The

fraction of the day of its service must be excluded in the computation, not only for the reason already given, but because the greatest liberality of construction should be accorded to an accused in passing upon his rights and privileges before, during, and after his trial.  Had a different estimate been made, by including the portion of Thursday which, as we have said, would have been erroneous, then the trial could not have commenced until some time during Saturday, the last of the judicial days of that term.  It must, necessarily, have been precipitated with haste, and without that deliberation and reflection on the part of the court, which is due, as a right, in the course of law, to an accused, in so solemn and awful a position.

The main reason urged against the validity of the indictment is based upon an alleged informality of the certification of the manner in which the jurors for the term of the court, at which the indictment was returned, were drawn.  There having been an omission by the clerk of the circuit court, and sheriff of the county of Pontotoc, to draw the jurors, as required by the general circuit court law, in such case provided; the certificate of the clerk of the probate court shows in the record, that the clerk of the circuit court, and the sheriff of the county, in presence of the judge of probate, and during the term time of his court, did draw the requisite number of jurors for the said March term, 1843, of that circuit court.  H. & H., 491, § 46.  The inspection and supervision of this proceeding shows a judicial exercise of the duties of the judge of probate, which is properly, and must necessarily, under such circumstances, be certified unto by the clerk of that court.  If done in vacation, the certificate may be by the judge of probate himself, but when done in term time, it must be certified by the clerk.

After a careful and elaborate examination of the record in this case, we can see nothing that calls for a reversal of the judgment of the judge of the ninth judicial district.

The judgment is therefore affirmed.