[Crim. No. 121.   In Bank.—November 30, 1896.]

## THE PEOPLE, RESPONDENT, *v.* W. H. THOMPSON, APPELLANT.

CRIMINAL LAW—SEPARATE APPEALS—LAW OF CASE—NEW TRIAL ORDER—REVIEW OF INSTRUCTIONS.—When an appeal separately taken from the judgment in a criminal case is decided only upon questions arising upon demurrer to the information, and the instructions were not in fact presented or passed upon, the rule of the law of the case does not forbid the review of the instructions upon a separate appeal from an order denying a new trial, notwithstanding they might have been presented and reviewed upon the appeal from the judgment; and, in such case, the defendant may prosecute both appeals, though he can have but one decision on the same point.

TRAIN-WRECKING — ERRONEOUS INSTRUCTION — ROBBERY. —Where a defendant is charged with the crime of derailing a railroad train, and unlawfully boarding the train with intent to rob the same, it is error to instruct the jury that they should find the defendant guilty if he boarded the express-car, and with force and violence robbed the messenger of money in his custody.

ID.—INAPPLICABLE INSTRUCTION.—It is error to give an instruction which is inapplicable to the case, and which assumes the existence of evidence not given.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial.   B. N. SMITH, Judge.

The facts are stated in the opinion of the court.

*W. A. Harris, Ben. Goodrich,* and *D. K. Trask,* for Appellant.

*W. F. Fitzgerald, Attorney General, Henry C. Carter, Deputy Attorney General,* and *C. N. Post, Deputy Attorney General,* for Respondent.

TEMPLE, J. — The defendant was convicted upon a charge of derailing a railroad train, and unlawfully boarding a train with intent to rob the same. This appeal is from an order refusing a new trial, and the only points made are that the court erred in giving certain instructions.

An appeal from the judgment was separately taken, and there being no bill of exceptions to be settled—as the points arose upon the demurrer—that appeal reached here first, and was long since decided. (*People* v. *Thompson*, 111 Cal. 242.)

On the former appeal from the judgment no points were made with reference to the instructions, and, as there was no bill of exceptions, such points could not have been presented to the best advantage. Still, the defendant might have had a bill of exceptions on the appeal from the judgment, in which so much of the evidence as was necessary to illustrate his points could have been set out.

The code expressly provides (Pen. Code, sec. 1176) that the instructions given or refused, whether in writing or taken down by the reporter, with the indorsements thereon (showing whether given or not) constitute a part of the record, and the rulings may be reviewed on appeal as though embodied in a bill of exceptions.

In criminal cases, if a motion for a new trial is made, it must be denied before judgment is entered against the defendant. Section 1172 of the Penal Code provides for an exception to an order denying a new trial. The order denying a new trial is therefore an order made before judgment, and may be reviewed on an appeal from the judgment. There is, therefore, no real necessity for an appeal from an order denying a new trial. Still the code provides for an appeal from the judgment and from an order denying a new trial. (Pen. Code, sec. 1237.) Now it is suggested that because there has been an appeal from the judgment, upon which the alleged errors in giving the instructions might have been considered, they cannot be considered on this appeal.

That is to say, a defendant is at liberty to present such questions either upon an appeal from the judgment, or upon an appeal from an order refusing a new trial, but he cannot do both. Furthermore, it is contended an affirmance of the judgment on appeal is final as to questions which were or might have been presented on that appeal. It would, therefore, follow that if he could have had a record which would have presented his point and did not, he has lost his right to be heard.

Such, as I understand the suggestions, are the reasons urged for refusing to consider the exceptions on this appeal; in reference to which it may be said that both methods are provided by the statute. The motion for a new trial is an independent proceeding in the case, and it often happens, in civil cases, that a judgment is set aside on a motion for a new trial after it has been affirmed on appeal. It could not be so vacated by the trial court in a criminal case, simply because the judgment cannot be entered until the motion for a new trial has been disposed of. But, as there may be an appeal from the judgment and afterward an appeal from the order refusing a new trial, the judgment might be affirmed here on an appeal from the judgment, and afterward set aside on an appeal from an order denying a new trial, as in civil cases.

It is entirely a matter of statutory control, and, since both appeals have been provided, I can see no reason why the court should refuse to hear either. It would be going beyond any case within my knowledge, to hold that a determination of an appeal is conclusive upon all questions which might have been raised upon any record which, under the rules of practice, might have been made.

If conclusive as to the instructions, it would be equally conclusive as to every question which might be made on a motion for a new trial, for, as already stated, every point made on a motion for a new trial could be considered on an appeal from the judgment with a proper record.

The true rule, in my opinion, is that defendant may prosecute both appeals, but can have but one decision of the same point.

This precise question has, I think, been decided by this court, after most mature consideration, in *Sharon v. Sharon*, 79 Cal. 633. That was a civil case, but so far as affects this question I see no difference in principle. The reasoning there adopted applies with at least equal force here. The court said: "The law of this state permits two appeals in the same case—one from the judgment, and the other from the order denying a new trial. Both of these appeals have a direct effect on the judgment, and, if successful, may vacate it entirely or modify it, as the court may determine. These appeals may both be prosecuted and be pending in this court at the same time, as was the case here until the appeal from the judgment was disposed of. The fact that this court has declared a rule of law in deciding the appeal first reached for decision, and upon which no action has been or can be taken until the second appeal is also disposed of, cannot, by reason of the rule invoked by the respondent, prevent the court from fully investigating and deciding the second appeal to the extent of modifying or wholly changing its former decision, if it be satisfied that an error has been committed. The case must be regarded as within the control of this court until both appeals are determined."

The questions now raised as to the instructions were not presented on the appeal from the judgment, and, as to one instruction at least, could not have been fully presented without a bill of exceptions.

On the appeal from the judgment it was decided that the information in charging that the defendant willfully, unlawfully, and feloniously threw out a switch with intent to derail a passenger train, and " did then and there willfully, unlawfully, and feloniously board a passenger train . . . . with intent then and there to rob said passenger train," did not charge two offenses.

The act under which the prosecution was had was an

act adding one section to the Penal Code. It was said by the court on the former appeal that "this act arose from the necessity of the times, and was created for the purpose of stopping train-wrecking and punishing train-wreckers. The act so declared its purpose in terms, and, aside from one clause thereof, such purpose is patent upon the most casual inspection of its provisions." Again, speaking of this one clause in which the purpose was less manifest, the court said: "The whole tenor and purpose of the act is directed against train-wrecking, and this is true as to subdivision 2 equally with all other subdivisions. At first glance, that clause would seem to be directed toward the suppression of the crime of robbery, but the offense of robbery is only incidentally involved, and the prevention of the wrecking of the train, and the consequent and natural results following of injury and death to the passengers, is its prime purpose. Whatever else the clause imports, it means acts of violence upon the train. It imports to a more or less degree the subjection of the employees to the robbers, the menace and duress of the employees, a loss of the control of the train by them, fright upon their part and even death. These things being so, the probabilities of destruction to the train and passengers follow nearly as necessarily as such probabilities would follow from the misplacing of a switch or the removal of a rail. Hence we say that every part and clause of the act is directed toward the suppression of train-wrecking."

To charge, then, displacing a switch with intent to derail a train and to board the same with intent to rob the same, is to charge but a single offense, because the probable, or at least the possible, effect of each act is to wreck the train. The one offense charged is train-wrecking. Furthermore, the act is not designed to prevent or punish robbery, save when that is an incident in train-wrecking. We also derive from this a definition of the phrase "robbing a train." It is to take from the persons having charge of the train, by violence

and intimidation, the control and management thereof, with intent to take from it, or from a person upon it, something of value. Train-wrecking must be such a destruction of a train as will endanger human life. It must be of an operative train, one being used.

Upon the former appeal the court was considering the demurrer alone, and, of course, understood the information to charge that the defendant boarded such a train. The evidence discloses, however, without conflict, that the defendant did not board or attempt to board the train until after it had been wrecked. At that time the train was not an operating train and could not have been wrecked. Therefore, when the defendant boarded the train with the intent to rob it—if he can be said to have done so—the act could not, by any possibility, have contributed toward wrecking the train.

This would not necessarily have prevented the conviction of the defendant. He could still have been convicted and punished for throwing out a switch for the purpose of wrecking the train. The evidence was sufficient to sustain a conviction upon that ground. But unfortunately the jury was instructed by the court as follows: "If the jury believes from the evidence that the defendant, W. H. Thompson, with Alva Johnson, at the county of Los Angeles, in the state of California, on the fifteenth day of February, 1894, boarded an express car in a passenger train, on the Southern Pacific Railroad, at Roscoe station in said county, and by force and violence, or by putting in fear of some injury to the person of the messenger in charge of said car, did rob, steal, and carry away any money of any value then in the custody, or under the care, or in the control of said messenger, then the jury should find the defendant guilty."

Under the opinion rendered upon the former appeal, boarding a train, under such circumstances as the evidence in this case tends to prove, could not constitute the crime of train-wrecking. The jury were told that

they must convict the defendant of the offense of train-wrecking if they found that he boarded an express car, which, without conflict, the evidence shows was not then a part of a train which could have been operated or wrecked, and by putting in fear the messenger in charge of the car—not of the train—did rob or steal anything of value in the custody of the messenger.

That is to say, although they should find that defendant did not derail the train, and had not interfered with it until after it had been wrecked, still they must find him guilty of this offense if, after the train had been wrecked, he robbed the express messenger while on the car. The so-called train was not then in reality a train. It had no engine and could not have been operated or wrecked. The express car did not then constitute a part of a train. Judged by the opinion rendered on the former appeal, as well as by general rules of law, the above instruction is wrong.

There are additional objections to the third instruction. In it the jury were told that if Alva Johnson threw out a switch with the intent to derail a train, and if he unlawfully boarded the train with intent to rob the same, and in the perpetration of such offense one Masters was killed, and defendant aided and abetted, they must find the defendant guilty.

Evidence of the killing of Masters was objected to at the trial, and admitted over defendant's objection.

By this instruction the attention of the jury is called to it as a material circumstance tending to show the guilt of the defendant. The jury were told that if Johnson boarded the train with the intent to rob it, and the train was thereby ditched and Masters killed, defendant, if he aided and abetted, was guilty. There was no evidence which tended to show that Johnson boarded the train with intent to rob it, and that in the perpetration of that offense the train was ditched. On the contrary, the evidence shows, without contradiction, that Johnson did not board or attempt to board the train until after it had been ditched. The instruction

was, therefore, erroneous, in that it assumed the existence of evidence which had not been given, and because it was not applicable to any fact in the case.

For these reasons the judgment is reversed and a new trial ordered.

Henshaw, J., concurred.

McFarland, J., dissented.

Beatty, C. J., concurring.—I concur in the judgment, and generally, in the opinion of Justice Temple, but I think a word should be added with reference to the novel practice pursued in this case, of bringing up the appeals from the judgment and from the order denying a new trial separately, and upon different records. ·

This case fully illustrates the proposition that such practice is productive of delay and unnecessary expense, and that it is as inconvenient as it is unusual. For the purpose of preventing such proceedings in the future, I would suggest that this may easily be done by following the directions contained in section 1246 of the Penal Code, which impose upon the county clerk the duty of printing and transmitting the record in criminal cases. The Penal Code, sections 1170–73, provides for various bills of exceptions to be settled before, during, and after the trial, all or any of which may be used in support of an appeal from the judgment, but "the bill of exceptions" especially referred to in section 1246 is that provided for in section 1171, viz., the bill of the exceptions taken at the trial, and which must be presented for settlement within ten days after the judgment.

If no such bill of exceptions has been settled when the appeal is taken, and the time for its presentation has not elapsed, the clerk should wait till it has been settled, or until the right to have it settled has been lost or waived, before printing the record, and when he does print it he should, as the almost universal practice is, and as I think the statute clearly intends, print the

entire record, including all bills of exception, in one record for both appeals.

HARRISON, J., concurring.—On the appeal from the judgment against the defendant (*People* v. *Thompson,* 111 Cal. 242), the instructions to the jury were not considered or passed upon by this court. The sufficiency of the information, as tested by the demurrer, was the only matter of law then considered or determined. In the prevailing opinion it was said: " A demurrer to the information was overruled, and the reversal or affirmance of this judgment is dependent upon the legal soundness of the action of the trial court in that behalf"; and Mr. Justice Henshaw said, in his dissenting opinion: "This hearing is on demurrer only." It follows that only the propositions of law presented by the demurrer and then determined fall within the rules governing the " law of the case." These rules rest upon the principles of an estoppel, and it is evident that, as the action of the trial court which is now under review was had anterior to the decision of this court upon the appeal from the judgment, none of the elements of an estoppel can be invoked for the purpose of preventing a review of its action. The " law of the case" is properly invoked when upon a former appeal, in the same action, this court has declared the rule of law governing the rights of the litigants in that action. But, as the judgment of this court upon the other appeal was rendered without determining, or even considering, the directions to the jury, and would not have even the force of a precedent in another case involving the correctness of the same instructions, much less can it be held conclusive in the same case, when their correctness is for the first time directly challenged.

The court erred in giving to the jury the third instruction, but in my opinion, for a different reason from that assigned by Mr. Justice Temple. This instruction is as follows: " If the jury finds from the evidence that Alva Johnson, at the county of Los Angeles, state

of California, on the fifteenth day of February, 1894,
did willfully, unlawfully, and feloniously throw out a
switch at Roscoe station, on the Southern Pacific Rail-
road, in said county, with intent then and there to
derail a passenger train, and did then and there will-
fully, unlawfully, and feloniously board said passenger
train, with intent then and there to rob the same, and
in the perpetration of said offense said train was ditched,
and one Masters was killed, and that the defendant,
W. H. Thompson, was present then and there, aiding,
abetting, and counseling said Johnson in the perpetra-
tion of said offense, then you will find the defendant
guilty as charged in the information."

The instruction follows the language of the informa-
tion, and, as it was held on the appeal from the judg-
ment that the facts set out in the information charged
the defendant with but a single offense, that portion of
the instruction which refers to the ditching of the train
and the killing of Masters, " in the perpetration of said
offense," was authorized by the evidence connecting the
defendant with the ditching of the train; and the " of-
fense" referred to in the instruction must have been
understood by the jury as including the throwing out
of the switch, as well as boarding the train.  The fact
that the train had been ditched before the defendant
boarded the express car was immaterial if the two acts
were part of a single transaction, and done in pursuance
of an original purpose; and, if the defendant threw out
the switch for the purpose of enabling him the more
readily to board the train for the purpose of robbing it,
it was immaterial that the train had been brought to a
standstill before he actually got upon the car.  Neither
would a temporary purpose of abandoning the original
plan, after the train had been brought to a stop, change
the character of the offense, if such original plan was
resumed and carried into effect.

The instruction assumes that there was evidence that
Johnson threw out the switch, and that the defendant
was merely present, aiding, abetting, and counseling

him in the perpetration of the offense, whereas, the only evidence in reference thereto was that of Johnson himself, who testified that the switch was thrown out by the defendant. This portion of the instruction could not, however, have prejudiced the defendant; but the former portion was clearly prejudicial to him, in presenting to the jury the fact that Masters was killed, and thus indirectly charging him with a homicide. No charge of this nature was made in the information, and, although evidence of the killing of Masters was introduced before the jury against the objections of the defendant, there was no issue upon that fact, which he was called upon to meet, and the jury should not have been allowed to consider that fact for the purpose of determining his guilt.

The order denying a new trial should be reversed and a new trial granted.