[Crim. No. 1275.   Second Appellate District, Division Two.—January 12, 1926.]

## THE PEOPLE, Respondent, v. VIVIAN WALKER, Appellant.

[1] CRIMINAL LAW—REVERSAL BY DISTRICT COURT OF APPEAL—SETTING CASE FOR RETRIAL—TIME—REMITTITUR—DISMISSAL.—The setting of a criminal case for retrial after a reversal ordered by the district court of appeal, on a day which is but thirty-seven days after the issuance of the *remittitur,* does not constitute error, the *remittitur* being issued immediately upon the expiration of sixty days after the pronouncement of the judgment of reversal by the district court of appeal.

[2] ID.—RIGHT TO SPEEDY AND PUBLIC TRIAL—CONSTITUTIONAL LAW—SECTION 1382, PENAL CODE.—By section 13 of article I of the constitution every accused person is guaranteed the right to a speedy and public trial, and section 1382 of the Penal Code, relating to the dismissal of a criminal action, is a construction of the constitutional mandate so far as to·indicate what is a reasonable time within which the steps specifically referred to therein should be taken in order that the constitutional guaranty may be kept.

[3] ID.—CONSTITUTIONAL LAW—APPEAL—RULES—SUPREME COURT.—By virtue of the power conferred by section 3 of article VI of the constitution upon the supreme court "to make and ·adopt rules, not inconsistent with law," for the government of itself and of the district courts of appeal, the supreme court has authority to make rules of practice which have the force of positive law, so far as the rights of parties are concerned, provided such laws do not conflict with any lawful act of the legislature.

2.  See 8 Cal. Jur. 201.

[4] Id. — Issuance of Remittitur by District Court of Appeal — Time—Rule of Supreme Court—Validity of.—Rule XXXIV of the supreme court, which provides that "when a judgment of a District Court of Appeal becomes final therein, the *remittitur* shall not be issued until after the lapse of thirty days thereafter, unless otherwise ordered," is a valid rule having all the sanction of positive law.

[5] Id.—Judgment of District Court of Appeal—When Pronounced and When Final in That Court.—The judgment of a district court of appeal is "pronounced" by it when it directs the entry of judgment, which ordinarily is at the time when its opinion is filed, and upon the expiration of thirty days after the judgment has been so pronounced by said court, the judgment becomes "final therein," i. e., it then, and not before, becomes final *in that court.*

[6] Id.—When Judgment is Conclusive of Rights of Parties.—The judgment of a district court of appeal does not become final, in the sense that it is conclusive of the rights of the parties, until the expiration of sixty days after it shall have been pronounced by that court.

[7] Id.—Section 1264, Penal Code—Construction of—Judgment of District Court of Appeal — Time of Finality. — As the word "given" is used in section 1264 of the Penal Code, which provides that "When the judgment of the appellate court is *given,* it must be entered in the minutes, and a certified copy of the entry, with a copy of the opinion of the court attached thereto, *forthwith* remitted to the clerk of the court from which the appeal was taken," the judgment of the appellate court is "given" when, and only when, it becomes conclusive upon the rights of the parties, and a judgment of a district court of appeal does not become conclusive of the rights of the parties, and therefore is not "given," in the sense in which that word is used in said section, until the expiration of thirty days after it becomes final in said court, or sixty days after its pronouncement by said court.

[8] Id.—Remittitur—Time.—A *remittitur* which is issued by the clerk of the district court of appeal on the day following the expiration of sixty days from the pronouncement of the judgment of the said court is issued in due time.

[9] Id.—Obtaining Money by False Pretenses—Demurrer to Information—Former Decision—Effect of.—In a prosecution for obtaining money by false pretenses, where the question of alleged error by the trial court in overruling defendant's demurrer to the information was presented on a former appeal and decided adversely to defendant, the decision on such questions became the settled law of the case that the information was sufficient as against the demurrer interposed thereto, and concluded any further review on a second appeal of the questions presented by the

demurrer; and it is immaterial that the defendant advances on said second appeal additional points in support of said demurrer.

[10] ID.—LAW OF CASE.—The doctrine of the law of the case applies not only to the points which the court actually considers, but to every point presented by the record and which was necessarily involved in the prior decision.

[11] ID.—PLEADING—APPEAL—LAW OF CASE.—Where the sufficiency of a pleading, challenged by demurrer, is determined on one appeal, the determination is conclusive when the same question again is presented in any subsequent stage of the cause, although the specific reasons subsequently urged in support of the demurrer were not presented on the former appeal.

[12] ID. — SEVERAL FALSE PRETENSES — CONVICTION OF ONE. — In such prosecution, where the information charges several false pretenses, a conviction may be had, and will be sustained, by proof of only one of such pretenses, provided it be established to the satisfaction of the jury that the particular pretense which is so proved was material in inducing the complaining witness to part with his money or property.

[13] ID.—REPRESENTATION—EVIDENCE.—In such prosecution, one of the pretenses charged in the information as inducing the complaining witness to purchase a half interest in defendant's "divine healing business," was sufficiently proved, namely, the representation to the effect that defendant "had patients, suffering from confining illnesses, maladies and diseases, sufficient to more than fill an eleven-room sanitarium or house."

[14] ID.—EVIDENCE—APPEAL.—The sufficiency of the testimony of each of the complaining witnesses may not be tested on appeal by the weight which the members of the appellate court might have given it had they been sitting as jurors on the trial of the case. It is the province of the jurors to weigh and consider such testimony and they may reject all of it as false, or they may determine to accept as true one or the other of such contradictory asseverations.

[15] ID.—REPRESENTATION—EVIDENCE.—In such prosecution, it does not follow from the fact that one of the complaining witnesses testified on cross-examination that his reason for paying the money to defendant was the latter's statement to him that she could make him "a large profit out of the investment," that said complaining witness was influenced solely by the representation that he could make "a large profit," and not by defendant's representation as to the number of patients which she claimed to have had.

10.   See 2 Cal. Jur. 960.
12.   See 12 Cal. Jur. 469.
14.   See 8 Cal. Jur. 587; 2 R. C. L. 195.

[16] ID.—REPRESENTATION—NATURE OF.—In such prosecution, one of the pretenses alleged in the information to the effect that if the complaining witnesses would purchase from defendant a half interest in the divine healing business they (the complaining witnesses) "could and would realize therefrom an income of one thousand dollars per month or more," is not an indictable representation, however false it may have been.

[17] ID.—FUTURE EVENT—REPRESENTATION.—To be indictable a representation must be of a past event or of an existing fact. No representation of a future event, whether in the form of a promise or of an opinion, can be a criminal pretense.

[18] ID.—INSTRUCTIONS.—As an abstract proposition of law, where the information charges several false pretenses it is proper to instruct the jury that a conviction may be had on only one of them, if it was material in inducing the prosecuting witness to part with his money; but such an instruction should not be given where one of the false pretenses charged in the information is but the expression of an opinion having reference to an expected future possibility.

[19] ID. — CONVICTION — INSTRUCTION — HARMLESS ERROR. — In such prosecution, although it was error to give an instruction to the effect that the jurors might convict defendant if they believed that "any one" of the pretenses set out in the information was proven beyond a reasonable doubt, because one of the pretenses charged in the information was but the expression of an opinion, nevertheless, such error was harmless, where no evidence was educed which tended to support such alleged false pretenses, and consequently such pretense could not possibly have been made the basis of the verdict of any one of the jurors.

---

(1) 16 C. J., p. 373, n. 13.   (2) 16 C. J., p. 439, n. 5, p. 440, n. 8, 9.   (3) 15 C. J., p. 904, n. 25, 26, p. 909, n. 7.   (4) 15 C. J., p. 907, n. 77; 17 C. J., p. 373, n. 13.   (5) 17 C. J., p. 373, n. 13. (6) 17 C. J., p. 373, n. 13.   (7) 17 C. J., p. 373, n. 13; 28 C. J., p. 708, n. 71.   (8) 17 C. J., p. 373, n. 13.   (9) 17 C. J., p. 207, n. 68. (10) 17 C. J., p. 207, n. 68.   (11) 4 C. J., p. 1108, n. 74, p. 1109, n. 75.   (12) 25 C. J., p. 640, n. 53.   (13) 25 C. J., p. 590, n. 93, p. 651, n. 46, 47.   (14) 16 C. J., p. 254, n. 51, p. 267, n. 90, 99. (15) 25 C. J., p. 599, n. 89, p. 600, n. 93.   (16) 25 C. J., p. 591, n. 93, p. 595, n. 33.   (17) 25 C. J., p. 590, n. 93, p. 595, n. 33. (18) 25 C. J., p. 656, n. 7.   (19) 17 C. J., p. 225, n. 70.

16.  See 8 Cal. Jur. 587.

17.  Representations indictable as false pretenses, notes, 25 Am. St. Rep. 379; 10 L. R. A. 303. See, also, 12 Cal. Jur. 452; 11 R. C. L. 831.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. L. D. Jennings, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edward J. Kelly, for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant was charged with the crime of obtaining money by false pretenses. She was convicted of the charge and now appeals from the judgment and from an order denying her motion for a new trial.

On August 3, 1922, at the city of San Diego, defendant, who claimed to be a "divine healer," sold to the complaining witnesses, G. W. Elgin and Mary E. Elgin, husband and wife, a half interest in the "divine healing business" then being conducted by defendant at San Diego. The parties entered into a written contract whereby it was agreed that the profits of the business should be divided equally between defendant, as the party of the first part, and the Elgins, as the parties of the second part. At the same time G. W. Elgin paid defendant the sum of one thousand five hundred dollars for the half interest so purchased by him and his wife. It is charged in the information that the payment of this sum was induced by seven false pretenses, alleged to have been made by defendant to the Elgins. These pretenses, as set out in the information, are as follows: (1) That defendant was then and there a "divine healer"; (2) that she then and there had patients, suffering from confining illnesses, maladies, and diseases, sufficient to more than fill an eleven-room sanitarium or house; (3) that she then and there was seeking to lease a sanitarium or house sufficient to accommodate that number of patients; (4) that she then and there had a patient with whom she had an agreement to pay her the sum of one thousand five hundred dollars for treatments; (5) that she then and there had another patient with whom she had an agreement to pay her the sum of two thousand dollars for treatments; (6) that she then and there had

sufficient patients and business to bring in an income in excess of one thousand dollars per month; and (7) that if the Elgins would purchase from her a one-half interest in the divine healing business the former "could and would realize therefrom an income of one thousand dollars per month or more."

This is the second appeal taken by defendant. The first appeal (69 Cal. App. 475 [231 Pac. 572]) resulted in a reversal of the judgment for errors committed in the admission of certain evidence educed by the prosecution.

[1] Our judgment on the first appeal was pronounced by us on October 30, 1924. Immediately upon the expiration of sixty days thereafter, i. e., on December 30, 1924, the *remittitur* was issued by the clerk of this court and was filed on the next day in the court below. On January 22, 1925, the case was called in the superior court for retrial. Thereupon defendant objected to the cause being set for trial and moved to dismiss the prosecution on the ground "that more than sixty days had expired since the time when," so it was claimed, "the *remittitur* should have been filed." The motion was denied. Thereupon the cause was set for trial on February 5, 1925, which was but thirty-seven days after the issuance of the *remittitur*. The trial was commenced on that date and was concluded on February 10, 1925.

Appellant's first point is that the court erred in denying her motion to dismiss the prosecution. She contends that there was unreasonable delay between the pronouncement of our judgment on the first appeal and the date for which the cause was set for retrial, the time between those two dates being ninety-seven days. The claim is entirely lacking in merit. Had the point not been pressed with such fervent zeal and with such evident good faith, we should have contented ourselves, in meeting it, with a mere reference to *Noel* v. *Smith,* 2 Cal. App. 158 [83 Pac. 167], and *People* v. *District Court of Appeal,* 193 Cal. 19 [222 Pac. 353]. The earnestness with which the point is urged prompts us to point out its fallacy with some degree of particularity.

[2] The defendant in a criminal prosecution is guaranteed a speedy trial alike by the constitution and by statute. By section 13 of article I of the constitution every accused

person is guaranteed "the right to a speedy and public trial." The statute, in order to prescribe with definiteness what should constitute a reasonable time, under the constitutional mandate, for the taking of certain steps in the prosecution of a criminal action, declares that, unless good cause be shown to the contrary, a prosecution must be dismissed against a defendant when an indictment has not been found or an information has not been filed against him within thirty days after he was committed to answer, or when he "is not brought to trial within sixty days after the finding of the indictment, or the filing of the information," and the trial has not been postponed on his application. (Pen. Code, sec. 1382.) This statutory provision is a construction of the constitutional mandate so far as to indicate what is a reasonable time within which the steps specifically referred to in the statute should be taken in order that the constitutional guaranty may be kept. (*In re Begerow,* 133 Cal. 349 [85 Am. St. Rep. 178, 56 L. R. A. 513, 65 Pac. 828]; Id., 136 Cal. 293 [56 L. R. A. 528, 68 Pac. 773].)

It is manifest that nothing in section 1382 warranted a dismissal of the prosecution against appellant, even if we were to concede, which we do not, that the issuance of the *remittitur* was unreasonably delayed. Whether section 1382 can have any possible application after there has been a judgment of reversal and a second trial has been ordered is a question respecting which there possibly may be some room for doubt under the language of some of the decisions of our supreme court. In the *Matter of Begerow, supra,* the court says that, regarded as a provision to enforce the constitutional guaranty, the effect of this code section must be held to be "that any unexcused delay of sixty days, *at any time,* to try a defendant will entitle him to have the prosecution dismissed." (133 Cal. 355 [65 Pac. 830].) On the other hand, in *People* v. *Lundin,* 120 Cal. 308 [52 Pac. 807], it was definitely stated and specifically held that "This provision of the statute does not apply to cases where a defendant has appealed to this court and had his case sent back for a second trial." To the same effect is *People* v. *Giesea,* 63 Cal. 345. See, also, *Ex parte Newell,* 188 Cal. 508 [206 Pac. 61]. However, if it should be assumed, for the purpose of this decision only, that the statute should be so in-

terpreted as to entitle the accused to a dismissal of the prose-
cution in all cases where the superior court, having acquired
jurisdiction to order a trial, fails to set the cause for trial for
more than sixty days after it became vested with jurisdiction
to do so, still the fact remains that here appellant was
brought to trial within less than sixty days after the su-
perior court had acquired jurisdiction to try her a second
time.   In other words, if the requirement of section 1382
that a nonconsenting defendant must be brought to trial
"within sixty days after the finding of the indictment or
the filing of the information" may be construed as applying
to the case of one who has successfully appealed from a
judgment of conviction, so as to entitle such a person to
be brought to trial a second time within sixty days after the
*remittitur* has come down, appellant still would fail to bring
herself within even that latitudinous construction of the
statute.

If, now, we turn to the constitution and consider its
broad and comprehensive pledge of a speedy trial, we shall
find nothing there to justify appellant's claim.   The language
of the organic law is most general.   It simply declares that
in criminal prosecutions the party accused "shall have the
right to a speedy . . . trial."   We think appellant received
the full measure of this constitutional guarantee.   The fallacy
of her position lies in her erroneous assumption that the
*remittitur* should have issued out of this court immediately
upon the pronouncement of our judgment of reversal.

By the constitutional guarantee of a "speedy trial," says
the court in *Nixon* v. *State,* 2 Smedes & M. 497 [41 Am. Dec.
601], is intended "a trial conducted according to fixed
rules, regulations and proceedings of law, free from vexa-
tious, capricious and oppressive delays, manufactured by the
ministers of justice."   Appellant's second trial was had ac-
cording to, and within the time contemplated by, fixed rules
and lawful regulations.

The *remittitur* issued out of this court on the former ap-
peal without any vexatious or oppressive delay, and within
the time prescribed by a rule promulgated by the supreme
court  for the government of this court, viz., rule XXXIV,
which reads: "When a judgment of a District Court of
Appeal becomes final therein, the *remittitur* shall not be is-

sued until after the lapse of thirty days thereafter, unless otherwise ordered." [3] The constitution expressly declares that the supreme court shall have power "to make and adopt rules, not inconsistent with law," for the government of itself and of the district courts of appeal. (Sec. 4, art. VI.) By virtue of the power thus conferred, the supreme court has authority to make rules of practice which have the force of positive law, so far as the rights of parties are concerned, provided such rules do not conflict with any lawful act of the legislature. (*Brooks* v. *Union Trust etc. Co.*, 146 Cal. 138 [79 Pac. 843].)

[4] Rule XXXIV is a valid rule, having all the sanction of positive law. It is provided by section 4 of article VI of the constitution that "judgments of the district courts of appeal shall become final *therein* upon the expiration of thirty days after the same shall have been *pronounced*"; also that the supreme court shall have power "to order any cause pending before a district court of appeal to be heard and determined by the supreme court," and that such order "may be made before judgment has been pronounced by a district court of appeal, or within thirty days after such judgment shall have become final *therein.*" (Italics ours.) [5] The judgment of a district court of appeal is "pronounced" by it when it directs the entry of judgment, which ordinarily is at the time when its opinion is filed. Upon the expiration of thirty days after the judgment has been so pronounced by the district court of appeal the judgment becomes "final therein," i. e., it then, and not before, becomes final *in that court*. But it does not then become a "final judgment," in the sense that it is conclusive of the rights of the parties: The effect of the constitutional provision that the judgment of a district court of appeal shall become final "therein" upon the expiration of thirty days after it shall have been "pronounced" by that court is to take from that court any further power to set aside or modify its judgment; but under the preceding sentence of section 6 of article VI, the supreme court, at any time within thirty days after the judgment shall have become final in the district court of appeal, may still order the cause to be heard and determined by it. [6] From this it follows that the judgment of a district court of appeal does not become

final, in the sense that it is conclusive of the rights of the parties, until the expiration of sixty days after it shall have been pronounced by that court. It was for the purpose of carrying these provisions of the constitution into effect, and to afford litigants an opportunity to obtain a judgment of the supreme court after decision by a district court of appeal, that rule XXXIV was adopted. These views are but restatements of what was said in *Noel* v. *Smith, supra,* and *People* v. *District Court of Appeal, supra.*

It follows from what we have said that rule XXXIV is a valid rule, and that the *remittitur* issued out of this court within due time, unless there be some valid statutory enactment with which the rule is in conflict.

Appellant claims that the rule conflicts with section 1264 of the Penal Code. That section reads: "When the judgment of the appellate court is *given,* it must be entered in the minutes, and a certified copy of the entry, with a copy of the opinion of the court attached thereto, *forthwith* remitted to the clerk of the court from which the appeal was taken." (Italics ours.) It is earnestly urged by appellant that under this statutory enactment it was the duty of the clerk of this court to issue the *remittitur* immediately upon the pronouncement of our judgment of reversal on October 30, 1924. The contention is based upon the erroneous assumption that a judgment is "given" when it is pronounced. [7] As the word is used in section 1264, the judgment of the appellate court is "given" when, and only when, it becomes conclusive upon the right of the parties. In *Young* v. *Wright,* 52 Cal. 410, the court says: "A judgment is duly 'rendered' when it is duly pronounced and ordered to be entered. [Citing authorities.] But a judgment duly 'made or given' is a complete judgment, properly entered in the judgment-book, so that it may be pleaded in bar of another action." As we already have shown, our judgment on the first appeal did not become conclusive of the rights of the parties, and therefore was not "given," in the sense in which that word is used in section 1264, until the expiration of thirty days after it became final in this court, or sixty days after its pronouncement by us. In other words, it was not "given" until December 29, 1924, the day before that on which the *remittitur* was issued. Any other

construction of section 1264 would throw it out of harmony with those provisions of the constitution, found in section 4 of article VI, which we have quoted *supra.* [8] It follows from the foregoing that the *remittitur* was issued in due time, and that appellant was not deprived of her constitutional privilege of a ''speedy trial.''

[9] It next is contended that the court below erred in overruling appellant's demurrer to the information. This ruling was made prior to the former appeal, and was presented to this court on that appeal as error entitling appellant to a reversal. We at that time decided the question adversely to appellant. It, therefore, has now become the settled law of the case that the information is sufficient as against the demurrer interposed thereto, and we are concluded by our former decision from any further review of the questions presented by the demurrer. It is immaterial that appellant now advances additional points in support of her demurrer. Every point which might have been advanced by her against the ruling of the lower court on the demurrer was necessarily involved when that ruling was presented to us on the former appeal as a ground for reversal. [10] It is well established that the doctrine of the law of the case applies not only to the points which the court actually considered, but to every point presented by the record and which was necessarily involved in the prior decision. (*Thompson* v. *Louisville Banking Co.,* 21 Ky. Law Rep. 1611 [55 S. W. 1080].) [11] Accordingly, it is held that where the sufficiency of a pleading, challenged by demurrer, is determined on one appeal, the determination is conclusive when the same question again is presented in any subsequent stage of the cause, although the specific reasons subsequently urged in support of the demurrer were not presented on the former appeal. (*McCowen* v. *Pew,* 18 Cal. App. 302, 312 [123 Pac. 191]; *Thompson* v. *Louisville Banking Co., supra; Ohio Valley Trust Co.* v. *Wernke,* 179 Ind. 49 [99 N. E. 734]; 4 C. J. 1108.) This is the rule in civil cases; and there is no reason in the nature of things why it should not be equally applicable to criminal causes. See *People* v. *Bennett,* 5 Cal. Unrep. 824 [50 Pac. 703], *People* v. *Thompson,* 115 Cal. 160 [46 Pac. 912], and *People* v. *Hatch,* 163 Cal. 372 [125 Pac. 907], where the applicability

of the doctrine of the law of the case to criminal causes was assumed by the court as a matter of course.

It is urged with much earnestness that the evidence is insufficient to sustain the verdict. **[12]** Where, as here, the information charges several false pretenses, a conviction may be had, and will be sustained, by proof of only one of such pretenses, provided it be established to the satisfaction of the jury that the particular pretense which is so proved was material in inducing the complaining witness to part with his money or property. (12 Cal. Jur. 469, 470.) **[13]** At least one of the pretenses charged in the information was sufficiently proved, namely, the representation to the effect that appellant "had patients, suffering from confining illnesses, maladies and diseases, sufficient to more than fill an eleven-room sanitarium or house." The gist of this representation is not the size of the house, nor the particular location or character of any specific house, but the possession by appellant of patients to the number and of the character mentioned in the representation. Speaking of this pretense we said on the former appeal that it "was one of fact," and that by it appellant meant "to convey the idea that she had at least eleven patients of the character referred to in the representation, or, if not that, it surely conveyed the idea, considering that the alleged patients were said to be suffering from confining illnesses, maladies, and diseases, that appellant was engaged in the conduct of a business of some magnitude, and it was to that extent a material representation."

The making of this pretense was proved by the testimony of two witnesses. Mrs. Elgin testified that on August 3, 1922, prior to the payment of the money, in the presence of herself and of her husband, appellant said that she had patients "enough to fill any sized house; that they would come and fill every room that we could get"; that she had enough "to fill a fourteen-room house," and "that they were sick, that they were bedridden, some of them were." "Q. Did Mrs. Walker, before you signed the contract [the contract by which the Elgins purchasd a half interest in appellant's divine healing business], tell you that she had patients in a number, no matter what the number may be, but in a number which would actually more than fill an

eleven-room house? A. Yes, sir." Mr. Elgin testified that before he paid the money appellant told him and his wife, each in the presence of the other, that she "had patients enough to fill any sized house she could get in San Diego"; that she "had lots of patients that she could put into a hospital if she had the room"; and that "there was no question but what she could make us lots of money." He further testified that before he paid the money he, his wife, and appellant looked at a fourteen-room house in San Diego; that upon this occasion he asked appellant if she could get enough patients to fill that fourteen-room house, and that appellant replied, "There will be no question about that. I have got them all promised, enough to fill it." He also testified that upon this occasion appellant said they could turn the large billiard-room in the fourteen-room house into a ward and "put in several beds." It is a fair inference from these statements of appellant, made by her to Mr. and Mrs. Elgin before the money was paid, that she intended to convey the idea, and that she did convey the idea to each of the complaining witnesses, that she had at that time enough patients, of the character described in the charge, to more than fill an eleven-room house—even a fourteen-room house. The falsity of this representation and its fraudulent character may well be inferred from all the evidence, considered in its entirety.

[14] Our attention is called to what are claimed to be inconsistencies or disparities in the testimony of each of the complaining witnesses. The sufficiency of this testimony may not be tested on appeal by the weight which the members of this court might have given it had they been sitting as jurors on the trial of the case. It is the province of the jurors to weigh and consider such testimony. They may reject all of it as false or they may determine to accept as true one or the other of such contradictory asseverations. (*People* v. *Durrant,* 116 Cal. 200 [48 Pac. 75]; *People* v. *Mooney,* 177 Cal. 650 [171 Pac. 690]; 8 Cal. Jur. 587.)

[15] On cross-examination Mr. Elgin testified that his reason for paying the money to appellant was her statement to him that she could make him "a large profit out of the investment." Wherefore it is argued that he was influenced solely by the representation that he could make "a large

profit," and not by appellant's representation as to the number of patients which she claimed to have had. This conclusion obviously is *non sequitur*. Undoubtedly the making of profit was the ultimate reason prompting Elgin to part with his money; but appellant's representation as to the number and character of patients she then had was a material factor in leading him to believe that he would make large profits if he accepted appellant's offer to take him and his wife into partnership.

One other point remains to be considered. The fourth and fifth false pretenses alleged in the information were conceded by appellant on the former appeal to be representations of fact and not mere statements of opinion. The first, second, third, and sixth alleged false pretenses were held by us on that appeal to be indictable representations of past or present facts. [16] The seventh and last pretense set forth in the information, the one to the effect that if the Elgins would purchase from appellant a half interest in the divine healing business they (the Elgins) "could and would realize therefrom an income of one thousand dollars per month or more," is not mentioned in the opinion which we handed down on that appeal. This pretense clearly is not an indictable representation, however false it may have been. The amount of profit which could or would subsequently be realized by the Elgins from the business, if they should conclude to purchase a half interest therein, necessarily was a matter of opinion, relating to something which possibly might happen in the future. [17] It is well settled that to be indictable the representation must be of a past event or of an existing fact. No representation of a future event, whether in the form of a promise or of an opinion, can be a criminal pretense. (*People* v. *Jordan,* 66 Cal. 10, 14 [56 Am. Rep. 73, 4 Pac. 773]; *People* v. *Wasservogle,* 77 Cal. 173 [19 Pac. 270]; *People* v. *Gibbs,* 98 Cal. 661 [33 Pac. 630]; *People* v. *Green,* 22 Cal. App. 45, 48 [133 Pac. 334]; 11 R. C. L., p. 831; note to *Barton* v. *People,* 25 Am. St. Rep. 379.)

Notwithstanding the seventh false pretense charged in the information was but the expression of an opinion, based upon expectation and hope, and therefore not a sufficient basis for a conviction thereon, the court instructed the jurors

to the effect that they might convict appellant if they believed that "any one" of the pretenses set out in the information was proven beyond a reasonable doubt. [18] Considered as an abstract proposition of law, it may be said, generally speaking, that where an information charges several false pretenses it is proper to instruct the jury that a conviction may be had on only one of them, if it was material in inducing the prosecuting witness to part with his money. (*People* v. *Griesheimer*, 176 Cal. 44 [167 Pac. 521].) But obviously such an instruction should not be given where, as here, one of the false pretenses charged in the information is but the expression of an opinion having reference to an expected future possibility.

[19] In the course of his argument in support of his contention that the evidence is insufficient to support the verdict, appellant's counsel makes the point that because the jurors were instructed that a conviction might be had upon "any one" of the pretenses set forth in the instruction, it necessarily follows that "the verdict is an uncertainty" and that the uncertainty "nullifies" the verdict. The reason assigned for this contention is that it cannot possibly be known whether the verdict was or was not based upon the seventh alleged false pretense. The argument is, in effect, but an indirect way of saying that the giving of the instruction, under the circumstances of this case, was error. We think it was error to give the instruction. But the vital question is, Was it harmful error? We do not think the instruction could possibly have injured appellant. She admits that there was not a scintilla of evidence tending to support the charge that she made the seventh alleged false pretense. In the brief filed on her behalf her counsel says: "As to the sixth specification [the sixth alleged false pretense] . . . the record is entirely silent as to anything tending to support the charge. The same may be said of specification number seven to the effect that the defendant falsely represented that if the Elgins would purchase a half interest from the defendant they would realize therefrom an income of one thousand dollars, or more." Jurors must be presumed to possess at least ordinary intelligence and to have an honest regard for the sanctity of their oaths. If, therefore, it be a fact, as appellant concedes it to be, that no evidence was

educed which tends to support the seventh alleged false pretense, then that representation could not possibly have been made the basis of the verdict of any one of the jurors. For this reason we think that the error in giving the instruction was harmless and not ground for reversal.

The judgment and the order denying a new trial are affirmed.

Works, J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 11, 1926.