[Crim. No. 3370. First Dist., Div. Two. Jan. 2, 1958.]

THE PEOPLE, Respondent, v. RUFUS HARVEY, SR., Appellant.

Loyd W. Carter, Benjamin M. Davis and Lionel Browne for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Francis W. Collins, District Attorney (Contra Costa), and Rudd Seller, Deputy District Attorney, for Respondent.

KAUFMAN, P. J.—Appellant was charged by information with the possession of marijuana in violation of Health and Safety Code, section 11500. This appeal is taken from the judgment of conviction entered on a jury verdict and from the order of the court denying appellant's motion for a new trial.

On July 2, 1956, this court reversed a prior decision of the trial court on the same count. (142 Cal.App.2d 728 [299 P.2d 310].) The Supreme Court denied a hearing on August 2, 1956. On receipt of the remittitur, the clerk of the Superior Court of Contra Costa County calendared the matter for a new trial. Appellant, through his counsel, moved to withdraw his plea of not guilty and to dismiss, vacate and set aside the prior information (No. 5704), which motions were granted on September 4, 1956. On the same date, the district attorney filed a new information (No. 6032), identical with Number 5704 and based upon the same "evidence" as the first complaint. A motion to dismiss the new information was made and denied. Appellant entered a plea of not guilty, and the trial proceeded. The issue on this appeal, as on the prior one, is the legality of the arrest and search and seizure.

The first question is whether the doctrine of the law of the case is applicable here. ▇ It is well established that the doctrine applies to criminal cases as well as civil (*People* v. *Walker*, 76 Cal.App. 192 [244 P. 94]; *People* v. *Marshall*, 209 Cal. 540 [289 P. 629]) and to questions involving the admissibility of evidence. (*United States* v. *Davis*, 3 F.Supp. 97.) ▇ The rule is applicable where the facts are substantially identical and appear under the same circumstances. (*Leese* v. *Clark*, 20 Cal. 387; *Klauber* v. *San Diego St. Car Co.*, 98 Cal. 105 [32 P. 876]; *Nieto* v. *Carpenter*, 21 Cal. 455.) To determine its applicability we have examined the record submitted on the prior appeal. (*Sharon* v. *Sharon*, 79 Cal. 633 [22 P.

26, 131] ; *Eversdon* v. *Mayhew,* 85 Cal. 1 [21 P. 431, 24 P. 382] ; *Stanton* v. *French,* 91 Cal. 274 [27 P. 657, 25 Am.St.Rep. 174] ; *Otten* v. *Spreckels,* 183 Cal. 252 [191 P. 11].)

After an analysis of that record, we have concluded that the facts here are substantially the same as those of *People* v. *Harvey,* 142 Cal.App.2d 728 [299 P.2d 310], wherein they were stated as follows:

"On the evening of October 28, 1954, police officers Aiello and Russo of the Pittsburg Police Department were instructed . . . to go on a 'stake-out' in the vicinity of appellant Harvey's residence. They were told that appellant had been under surveillance by the department for some time and that he was believed to be dealing in narcotics. They were to observe appellant's residence and appellant if he should appear. If they believed that 'something was wrong' they were instructed to place appellant under arrest.

"About 8 :30 p. m., the police officers arrived at the stake-out. They concealed themselves across the street from appellant's residence behind a tree. A few minutes later appellant arrived . . . in a 1950 Cadillac . . . and apparently stood by it a little while. A blue coupé approached and parked just behind appellant's car. Appellant walked up to the occupant of the coupé, who remained in his car, and talked with him several minutes. The coupé then drove away. Appellant walked across the street toward his residence. He looked at something that was on the windshield of another car and then disappeared from the officers' view.

"A few minutes later the officers saw appellant coming down an outside flight of stairs from his upstairs apartment. Appellant stood for a few seconds at the foot of his stairs looking up and down the street with his hands in his overcoat pockets. He crossed the street to where the officers were standing behind the tree. Appellant looked up and down the street. The officers then decided to take him into custody. Officer Russo testified: 'We thought something was wrong.'

"The officers testified that they identified themselves as officers, showed their police badges and asked appellant to take his hands out of his pockets. Appellant did not comply but backed off from the officers. A struggle ensued. Three other officers arrived and appellant was subdued. All of the police officers were in civilian clothes. Officer Russo took a package from appellant's hand which was later found to contain marijuana.

"At the trial the package containing marijuana taken from appellant at the time of his arrest was introduced into evidence. Marijuana was also found after his arrest in the Cadillac car driven by appellant and traces of marijuana were found on the clothing worn by him when he was arrested. This was also introduced into evidence."

In the instant case, timely and proper objections were made to the introduction of the evidence.

■ On the former appeal, the appellant contended that the marijuana was attained by an illegal search and seizure, with which the court agreed, pointing out at page 731 as follows: "When the officers stepped from behind the tree and approached the defendant with the avowed purpose of placing him under arrest they had no legal ground for arresting him. His conduct up to that time was such as any man may legally engage in on a public street without arousing suspicion of misconduct. He had parked his car, talked to a person in another car, looked at something on the windshield of a third car, gone into his house, left his house again with his hands in his pockets, crossed the street and stood on the sidewalk looking up and down. These were all innocent actions that any law-abiding citizen should be able to engage in without fear of search or arrest. The fact that defendant was believed to be dealing in narcotics, added to such innocent conduct as the officers observed, was not sufficient to justify defendant's arrest without a warrant. The case in this respect was no stronger than that in *People* v. *Sanders*, 46 Cal.2d 247 [294 P.2d 10], where the court held that the fact that the defendant was a known bookmaker did not justify his arrest when he was seen writing upon a pad which might be innocently used by any businessman in the lawful conduct of his business. . . .

"The difficulty with this argument is that the police officers were not interrogating the defendant, but by their own unqualified testimony they were arresting him. Aiello testified that just before they stepped out from behind the tree: 'I says, "Shall we place him under arrest" and he says, "Okay," so I walked out first.' Russo testified, 'we nudged each other and says, "Let's place him into custody." ' '' In the instant case, the testimony of the officers was exactly the same as to the circumstances of the arrest, except as to their above statements to each other just before the arrest.

■ When asked why appellant had been arrested, the officer testified, "for the marijuana he was carrying," and

that he did not see the marijuana on the appellant until after the arrest when Officer Russo pulled it out. Here, as in the prior case, the officers had no reasonable cause to know that the defendant was carrying any marijuana until after they arrested and searched him. The testimony of the officer relating to the arrest is as follows: ''Well, we observed him for a few moments to see what he was up to. We saw that he was waiting for something or somebody, possibly a contact and we thought we would place him under arrest.''

 The court below found that the officers had reasonable and probable cause for the arrest because they were arresting on the basis of information received from a reliable informant. The record, however, does not substantiate the finding of the trial court. First, the evidence relating to the informant is of a very vague nature. One of the arresting officers testified that he had only seen an informant (who had worked on a different case) talking to his superior officer. The officer admitted that he did not hear the conversation and did not know what it was about. Later, the officer stated that he did not remember whether the supposed informant had provided him with any information about the appellant. Second, the record clearly indicates that the arrest was made solely in reliance on the information and briefing from Inspector Schillace.

Under Penal Code, section 836, an officer may make an arrest if he has reasonable and probable cause to believe that a felony has been committed or for a misdemeanor committed in his presence. It has been repeatedly held in this state that if reasonable cause justifying an arrest does not exist at the time of the arrest, an arrest cannot be justified by what a search which follows produces. (*People* v. *Brown*, 45 Cal.2d 640 [290 P.2d 528]; *People* v. *Gale*, 46 Cal.2d 253 [294 P.2d 13]; *People* v. *Goodo*, 147 Cal.App.2d 7 [304 P.2d 776]; *People* v. *Thymiakas*, 140 Cal.App.2d 940 [296 P.2d 4].) The record is devoid of any proof that the appellant was a known narcotic addict or seller, or that he had been previously arrested. Rather, one of the officers testified that the appellant had been under surveillance for about a year, that he had seen him during the last year, either parked or driving his car, during which time he never saw the appellant do anything wrong.

Respondent here produced only additional evidence newly cumulative to that given on the first appeal. (*Estate of Baird*, 193 Cal. 225.) Therefore, we can only reiterate our

former conclusion: "From the testimony of the officers it is clear that they approached the defendant, identified themselves to him as officers and requested him to remove his hands from his pockets as a step in his arrest, which they had already determined upon. They had no intention of interrogating him. They had already decided to arrest him and were carrying out that decision. Since the arrest was illegal their illegal conduct cannot become legal by what was disclosed while they were engaged in making the illegal arrest. (Citations.)" (142 Cal.App.2d 728 at 731-732.)

In view of the above, it is not necessary to discuss appellant's other contentions.

Judgment reversed.

DOOLING, J., and DRAPER, J.—We concur in the order of reversal.

We feel, however, that the facts surrounding and preceding the arrest should be more fully stated and discussed.

According to the testimony of Aiello, one of the arresting officers, he relied in making the arrest 1. on information given to him by an unidentified informer and 2. on information given to him by one Schillace, the superior police officer who sent him out that night to observe the appellant's conduct.

Some time previously the unidentified informer had told Aiello generally that the appellant was dealing in narcotics. There was some inconsistency in Aiello's testimony in this regard. At one time he testified that he was not sure that the informer gave him any information directly, but in any event this general information, coupled with appellant's conduct on the night of his arrest, was not sufficient to justify the arrest. The law of the case is clear on this point. We said in *People* v. *Harvey*, 142 Cal.App.2d 728, 731 [299 P.2d 310]: "The fact that defendant was believed to be dealing in narcotics, added to such innocent conduct as the officers observed, was not sufficient to justify defendant's arrest without a warrant."

In addition Aiello testified that Schillace informed him on the night of the arrest that he had sent the same informer out to purchase narcotics from the appellant. Aiello testified that Schillace further told him: " 'A buy will be made tonight at about . . . nine o'clock.' That the buyer would appear in a . . . blue coupe . . . if Mr. Harvey talked to such a person, if a blue coupe appeared and he made any conversation with any such person, then if Mr. Harvey would go to his resi-

dence, then I could assume that he was picking up marijuana and that he would make delivery . . . That this was his method of operation . . . That he would meet the party in the vicinity of his residence, chat with him a while, disappear, re-appear, and the sale would be made . . .''

We are satisfied that if Aiello had received this information directly from a reliable informer, including the description of appellant's customary method of selling marijuana, and had observed thereafter appellant talk to a man in a blue coupé, go into his house, reappear and stand looking up and down the street, under those circumstances and with that information Aiello could reasonably believe that appellant had marijuana in his possession and was waiting for the return of the blue coupé to deliver it. Under those circumstances we would hold that Aiello had reasonable grounds for arresting the appellant.

That however is not the situation here. Aiello's information came not from the informer but from Schillace. Schillace told Aiello that the informer had told Schillace these things. Schillace was dead at the time of trial and so could not testify to the fact that he had received the information from the informer which he transmitted to Aiello.

We are satisfied that if Schillace could have been produced and had testified that he did receive this information from the informer the arrest would likewise have been justified. It seems clear to us that if a superior police officer has reliable information which would justify him in making an arrest himself, he can delegate the making of the arrest to a subordinate, and justify the arrest by the subordinate by his (the superior's) knowledge. To permit the subordinate to justify the arrest on the superior's unsworn statement to the subordinate that the superior has obtained information from another justifying the arrest, however, would permit police officers to justify arrests by hearsay on hearsay, without requiring the sworn testimony of anybody that the information upon which the arrest was made was actually given to any police officer. To allow this would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly received by him from an informer to another officer who had not received such information from the informer, without establishing under oath that the information had in fact been given to any officer by the informer, or indeed that there was an informer at all. The possibilities of the phantom informer, if this were to be

permitted, are too obvious to need elaboration. (*Cf. People* v. *Lawrence,* 149 Cal.App.2d 435, 451 [308 P.2d 821].)

We find nothing in *People* v. *Fischer,* 49 Cal.2d 442, 446-447 [317 P.2d 967], inconsistent with this conclusion. There the "advance information" upon which the arresting officer relied came from a superior officer. Neither its reliability nor its source was challenged, the sole objection being that it was hearsay. In addition the arresting officer, acting on the "advance information" received from his superior, acquired personal information from the defendant sufficient to justify his arrest. He telephoned to the defendant and held a conversation showing his willingness to accept a bet. In the case before us the objection was properly made to the introduction of the marijuana into evidence that it was obtained by an illegal search and seizure, and the arresting officers personally observed nothing in the conduct of appellant which would justify his arrest. They acted solely on the information received from Schillace.

If the informer should be produced by the prosecution and should testify that he had in fact given the information to Schillace which Schillace transmitted to Aiello the trial court would be justified, if this was believed, in holding that Aiello had reasonable grounds for appellant's arrest. Instead the prosecution refused to disclose the informer's identity, its objection on the ground of privilege being sustained. This is asserted by appellant to have been error. The importance to appellant of this information is clear on the facts of this case since, because of Schillace's death, the informer is the only person living who could testify to his conversation with Schillace. However, our holding on the other ground, makes it unnecessary for us to pass on this specification.

A petition for a rehearing was denied January 31, 1958, and respondent's petition for a hearing by the Supreme Court was denied February 26, 1958. Gibson, C. J., Shenk, J., and Spence, J., were of the opinion that the petition should be granted.