[Crim. No. 3534. First Dist., Div. One. Oct. 1, 1958.]

THE PEOPLE, Respondent, v. GROVER HERMAN, Appellant.

*Assigned by Chairman of Judicial Council.

822

Grover Herman, in pro. per., and Walter H. Duane for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant, Grover Herman, also known as Harmon, was charged with unlawful possession of heroin, and with four prior felony convictions. He admitted three of the priors, and the fourth was dismissed on motion of the prosecutor. The case was tried before the court without a jury, and defendant was found guilty. On this appeal he

urges that his arrest, the search of his person, and the search of his home were illegal.

The sole witness was Officer Logan of the San Francisco Police Department. He testified that for about a month prior to October 11, 1957, the police had defendant's residence on Green Street in San Francisco under surveillance. During this period persons were seen to enter and to leave the premises who were known to the police as narcotic addicts. About 7 p. m. on October 11, 1957, an informant, who had been known to Officer Logan for three and a half years, told Logan that defendant was going to make a delivery of heroin that night near Union and Columbus Streets at about 10 p. m., and that defendant usually carried the narcotics in his pocket. During the period Logan had known this informant the latter had supplied the officer with quite a bit of information which had always been found to be reliable. On the faith of such information several arrests were made and a considerable amount of narcotics discovered.

Logan and several other officers, after receiving this information, proceeded to defendant's residence and kept it under surveillance. At about 10 p. m. defendant entered his residence and in about five minutes came out and started to walk west on Green Street. He stopped and talked with a man who got out of an automobile parked on Green Street, and then proceeded towards Powell Street. When he reached that area the officers stopped him. The officers identified themselves as such and Logan placed the defendant under arrest. Logan did not tell defendant the cause for the arrest. The officers then searched defendant. In one of his pockets two small Manila envelopes were found. It was stipulated that one envelope contained 90 grains of heroin, and the other 47 grains.

Logan and another officer then proceeded back to defendant's residence, defendant in the custody of a third officer, following them. As they approached the door, a man—the man to whom defendant had talked a short time before—arrived with a package of beer. As the officers arrived at the door of defendant's house it was opened by a man who identified himself as one Marchesi. Marchesi was told that Herman had been arrested. Logan asked Marchesi if he lived with Herman. Marchesi replied that he did not, but "I stay here from time to time." Logan then said that defendant would arrive in a minute and that the officers wanted to come in and look

around. Marchesi then stated "Help yourself." The two officers entered. At that time defendant was outside on the sidewalk in the custody of an officer. No request was made of defendant for permission to enter.

Logan then searched the premises. In a paper tissue box he found four packets. It was stipulated that these contained a total of 255 grains of heroin. About this time defendant was brought into the premises. He admitted that the packets in the tissue box belonged to him. Thus, it will be noted, the police found 137 grains of heroin in defendant's physical possession, and 255 grains at his residence, a total of 392 grains.

The first contention of appellant is that his arrest and the search of his person were illegal under the rule announced in *People* v. *Harvey,* 142 Cal.App.2d 728 [229 P.2d 310], and 156 Cal.App.2d 516 [319 P.2d 689]. On both appeals in that case the arrest .and search of the defendant were held to be illegal, and the evidence so discovered inadmissible. The case was undoubtedly correctly decided. On the first trial the evidence was that the arresting officers were told that defendant had been under surveillance for some time, that it was believed that he dealt in narcotics, and that if the officers believed that "something was wrong" they should arrest him. The officers saw defendant drive up near his residence, talk to a person who drove up in a coupé and then enter his residence. Shortly thereafter defendant came outside, looked up and down the street, crossed the street, again looked up and down, and was then arrested and searched. The appellate court properly reversed the conviction, holding the arrest and search to be illegal. The court pointed out that so far as the officers knew defendant was engaged only in "innocent actions that any law-abiding citizen should be able to engage in without fear of search or arrest." (142 Cal.App.2d at p. 731.) There was no reasonable ground for the arrest and search.

On the second trial, the arresting officer testified that a superior officer had told him that an informant was to make a buy that night from the defendant at about nine o'clock, and that defendant's mode of operation was to talk to the buyer outside his residence, pick up the marijuana at his residence, and then meet the buyer outside. All of the justices agreed that the arrest and search were still illegal because the arresting officer did not have reasonable grounds to believe that defendant was then violating the law. (156 Cal.App.2d 516.) It is significant that on the second appeal Justices Dooling and Draper joined in a special concurring opinion in which

they stated (p. 523): ''We are satisfied that if Aiello [the arresting officer] had received this information directly from a reliable informer, including the description of appellant's customary method of selling marijuana, and had observed thereafter appellant talk to a man in a blue coupé, go into his house, reappear and stand looking up and down the street, under those circumstances and with that information Aiello could reasonably believe that appellant had marijuana in his possession and was waiting for the return of the blue coupé to deliver it. Under those circumstances we would hold that Aiello had reasonable grounds for arresting the appellant.'' However, the information possessed by the arresting officer had been received from a superior officer, who was dead at the time of trial. The search was clearly illegal because there was no evidence at all of the reliability of the informant or that an emergency existed.

■ The instant case is not similar to the facts of the Harvey case, but is very similar to the hypothetical case posed in the concurring opinion as an example where the arrest would have been justified. In the instant case Officer Logan testified that he had known the informant for three and a half years, during which time he had found the informant to be reliable. The informant told Logan that defendant would make a delivery of narcotics at a specified time and place. At that time and place the defendant was observed to perform certain acts, all consistent with the inference that he was about to make a delivery. If all that was observed and known was what was observed outside defendant's residence, then the arrest and search without a warrant would have been unwarranted under the rule of the Harvey case. All of the actions observed would have been consistent with innocence. But when those activities were observed after receiving the information above set forth from a known reliable informant, those activities became highly suspicious and gave the officers reasonable grounds to believe that defendant was about to make an illegal delivery of narcotics.

Of course, the fact the nonparticipating informant was not produced at the trial is immaterial. ■ Information secured from a reliable informant may justify an arrest and search without a warrant without production of the informant as a witness. (*Lorenzen* v. *Superior Court*, 150 Cal.App.2d 506 [310 P.2d 180]; *People* v. *Dean*, 151 Cal.App.2d 165 [311 P.2d 85]; *People* v. *Moore*, 154 Cal.App.2d 43 [315 P.2d 357].) It should be noted that, although the name of the

informant was not divulged by the prosecution, no request for the name was made by defendant or his counsel.

■ Some complaint is made of the fact that the arresting officer admittedly did not inform the defendant of the nature of the charge at the time of his arrest, it being contended that this rendered the arrest illegal under the provisions of section 841 of the Penal Code. That section requires the arresting officer to inform the person to be arrested of the cause of his arrest ''except when the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense.'' In the instant case the defendant was actually engaged in the commission of a felony and the officers had reasonable grounds to believe that this was so. Thus, the case falls within the exception. (*People* v. *Beard*, 46 Cal.2d 278 [294 P.2d 29].)

■ Appellant also challenges the validity of the search of his residence. There is some confusion in the cases as to when a search of a residence is permissible where the defendant has been arrested some distance away. (Compare *Hernandez* v. *Superior Court*, 143 Cal.App.2d 20 [299 P.2d 678], relying on *Agnello* v. *United States*, 269 U.S. 20 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409], cited with approval in *People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469], with such cases as *People* v. *Montes*, 146 Cal.App.2d 530 [303 P.2d 1064], and *People* v. *Alaniz*, 149 Cal.App.2d 560 [309 P.2d 71].) In the instant case the house had been under police surveillance for about a month. Known narcotic addicts were seen to go in and out. On the night of the arrest defendant was seen to go into his house and come out under circumstances where it is reasonable to infer that he went into the house to secure narcotics. He was then lawfully arrested a short distance from the residence and narcotics found in his possession. Then, at the house, Marchesi answered the bell, and invited the officers to enter. Although Marchesi told the officers that he did not live with Herman, he did say ''I stay here from time to time.'' The fact that he was in the house alone supports the reasonable inference that this was one of the times that he was staying with Herman, was in joint possession, and was not simply a casual guest. (See generally *People* v. *Silva*, 140 Cal.App.2d 791 [295 P.2d 942]; *People* v. *Stewart*, 144 Cal. App.2d 555 [301 P.2d 301].) Under these circumstances the search of the residence was probably reasonable. ■ In any event, even if the search of the residence was improper,

the error in admitting the evidence secured in that search was harmless. Appellant was charged with one count of possession of heroin. The evidence that a large quantity of heroin was found on his person is uncontradicted and overwhelming. Once the validity of the arrest and search of appellant is established there can be no doubt at all that appellant is guilty of the offense charged. Thus, even if the evidence secured in the house was improperly admitted its admission could not have been prejudicial. The introduction of illegally secured evidence does not *per se* require a reversal—it depends upon whether such evidence was prejudicial. (*People* v. *Valenti*, 49 Cal.2d 199 [316 P.2d 633]; *People* v. *Tarantino*, 45 Cal.2d 590 [290 P.2d 505]; *People* v. *Felli*, 156 Cal.App.2d 123 [318 P.2d 840].) Here, even if the evidence were illegally secured, its erroneous admission into evidence could not possibly have been prejudicial.

The judgment appealed from is affirmed.

Bray, J., and St. Clair, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 26, 1958.

*Assigned by Chairman of Judicial Council.