[Crim. No. 6768. Second Dist., Div. One. Nov. 18, 1959.]

THE PEOPLE, Respondent, v. THEODORE P. KING, Appellant.

Lenoir & Cunningham for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

FOURT, J.—The appellant was charged in an information in Los Angeles County with having marijuana in his possession. In a nonjury trial the appellant was found guilty on March 25, 1959. On April 22, 1959, a motion for a new trial was denied. Proceedings were suspended and probation was granted for five years conditioned, among other things, upon his spending nine months in the county jail. The appellant filed a notice of appeal "from the judgment—rendered on the 25th of March, 1959" and "the denial of a motion for a new trial rendered on the 22nd day of April, 1959, and the sentence pronounced on the 22nd day of April, 1959."

A résumé of the facts is as follows: Ambrose P. Burke, Jr., a special agent for the Federal Bureau of Investigation, was working in the area of Adams and Normandy Streets in Los Angeles on an investigation of the robbery of the Security-First National Bank at 48th and Western Streets, Los Angeles on July 17, 1958. The agent's information was to the effect that the robbery at the bank had been committed by two male Negroes, that one of the robbers had entered the bank

and the other had operated a get-away car; that the get-away car was a two-tone green, that it was dark and dirty, that it rattled, had a loud muffler and that the driver supposedly was wearing a dark T-shirt and some sort of a white cap.

Burke first saw the appellant at about 1 or 1:15 o'clock p. m. in the 1600 block of Adams Street near Normandy, about 2 miles from the site of the robbery. Appellant was driving west on Adams in a 1951 Buick, two-toned, a lighter color over a dark green and, which, Burke said, "pretty well fit the description of the car described as the get-away car of the bank robbers." The car appellant was driving was also dirty, loud, and seemed to rattle. The appellant was the only person in the Buick car. Burke's partner, who was the driver of the Bureau car, pulled the appellant to the curb. The appellant got out of his car, went to the rear thereof where Burke talked to him about the bank robbery after displaying to appellant his identification card as a Federal Bureau of Investigation agent. After talking to the appellant about any possible knowledge of the bank robbery, they asked appellant what was in a box on the seat of the car. Appellant stated that there were clothes in it, that he was not sure what clothes they were, but that he was taking them back to the cleaners where he worked. Agent Burke testified, "In view of the fact there was a bank robbery and the car looked good, we asked the defendant if he minded if we looked in the box, in view of the fact there could be clothes or money in the box. This happened in the past and it was a logical question to ask him." The appellant stated that he had no objections to their looking into the box. There was three packages wrapped in brown paper, one of the packages was opened at one end and it appeared to contain a weed of some sort; there were seeds and leaves on it. Appellant said he did not know what it was. Another package was found under the driver's side of the front seat. The contents were later examined and found to contain 9½ pounds of marijuana.

Appellant was wearing slacks and a sports shirt and he said that he worked at the Jackson Cleaners and that he had gone to lunch at a girl friend's house. He could not describe the person who had given him the box, nor was he sure of the exact location where he had received it. At one time he said it was at 25th and Central and at another time he said it was at 50th and Central. Appellant identified himself as Wilson Hewitt, and showed a driver's license for that name. Later, while on the way to the police building, the appellant

stated that his name was not Hewitt, that it was Theodore P. King and said, "You will find out about it anyhow."

The federal agents did not place the appellant under arrest. They did not have a search warrant, nor a warrant of arrest. The federal agents called for the local police and waited until they arrived and then turned the appellant over to them. The local police placed the appellant under arrest at the scene. While on the way to the police station appellant said he knew the package contained marijuana—that he was delivering it for another person for which he was to receive $10.

Appellant contends that Burke had no right to stop or arrest the appellant; that appellant was arrested by Burke and that he did not give consent to the search of his car, and that the search and seizure was illegal.

There was ample testimony which, if believed, established clearly that the appellant consented to the search of his car. Appellant, however, states that even if consent was given the search was illegal and cites as authority *United States* v. *Slusser*, 270 F. 818 and *People* v. *Harvey*, 142 Cal.App.2d 728 [299 P.2d 310] and 156 Cal.App.2d 516 [319 P.2d 689]. In the Harvey cases, no consent was given. In the Slusser case the court held that where the federal officer had displayed his badge and stated "that they were there to search the premises" and Slusser had said "all right; go ahead" there was not a consent such as would amount to a waiver of his constitutional rights.

It is settled law in this state that where the defendant freely consented to a search of the premises under his control, any search made pursuant thereto is not unreasonable. *People* v. *Melody*, 164 Cal.App.2d 728, 734 [331 P.2d 72]; *People* v. *Burke*, 47 Cal.2d 45, 49 [301 P.2d 241]; *People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852]; *People* v. *Gorg*, 45 Cal.2d 776, 782 [291 P.2d 469].

And, as said in the Melody case, even if the defendant had been in custody:

"The fact that at the time defendant gave consent he was then in custody does not make the consent to the search involuntary *per se*. (*People* v. *Guy*, 145 Cal.App.2d 481 [302 P.2d 657]; *People* v. *White*, 159 Cal.App.2d 586 [324 P.2d 296].) Nor do we believe in the instant case that the fact the initial arrest was later deemed to be without probable cause has any bearing on whether the consent subsequently given to search the premises was voluntary."

There was ample evidence in this case to establish that the

consent was voluntary and that the federal agent relied upon such in making the search.

The appellant insists that he was arrested before the search even though the agent testified specifically that he did not arrest the appellant and the other facts bear out his statement in this regard. The judge heard all of the testimony, saw the witnesses and could well have concluded from what he saw and heard that no arrest was made by Burke or his partner.

The fact that a police officer stops a person and talks to him and asks some reasonable questions under the circumstances does not necessarily mean that the person so stopped is arrested. (See *People* v. *Michael, supra,* 45 Cal.2d 751, 754; *People* v. *Hood,* 149 Cal.App.2d 836, 838-839 [309 P.2d 135] ; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855].)

In other words, we believe that the federal agents under the circumstances of this case, had the right to stop the car and to question the appellant quite apart from the making of any arrest, and that that is what was done. Whether an officer has a right to stop a car and interrogate the occupant is an issue quite separate from whether he has a right to stop the car and to arrest the occupant and conduct a search. The strength of the information the officer requires to engage in questioning is necessarily much less than it would be to arrest and search. Here, the federal agent's conduct was, in our opinion, reasonable and proper in that he stopped the car and appellant to question him about a robbery which had recently been committed in the vicinity. The appearance of the defendant and of the car he was driving in the general neighborhood of the robbery fitted very closely the description of one of the persons who was engaged in the robbery and the get-away car which the agents were looking for. What could have been more reasonable under the circumstances than to stop the car and question the driver thereof?

The order denying the motion for a new trial and the order granting probation are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.