[Crim. No. 7304. Second Dist., Div. Two. Jan. 31, 1961.]

THE PEOPLE, Respondent, v. RICHARD ELZIE DAVIS, Appellant.

William T. Pillsbury and Thomas D. Griffin for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted of violating section 11530, Health and Safety Code (possession of marijuana). He has appealed from the judgment (order granting probation).

During the early afternoon of January 19, 1960, Officer Edgar P. Brown, of the Los Angeles Police Department, Harbor Division, Narcotic Detail, had the El Nido Café,

located in Wilmington, under surveillance because of its reputation as a source of narcotic activity. There were three well-known narcotic peddlers in the café at that time. Adjoining this café is the Park 'n Snack Restaurant. Both establishments are under the same roof and use the same parking lot. At approximately 1:40 that afternoon Officer Brown observed defendant, with two other persons in his car, drive through an adjacent alley and across the parking lot behind the El Nido Café. The officer presumed that defendant observed him at that time but did not know that he did. Defendant did not stop his car but drove out onto the highway. The police followed. They observed defendant make two left turns, a right, and then a U-turn within three or four blocks. The officer's suspicions were aroused by reason of having seen defendant drive into the parking lot of the El Nido Café and drive out without stopping and then proceed to make so many turns in such a short distance. As a consequence, when defendant was completing his U-turn, Officer Brown and his partner, Sergeant King, pulled up alongside. Both cars stopped. Officer Brown went to the driver's side. Defendant was seated behind the wheel. King went to the other side of the vehicle. Brown identified himself and his partner as police officers. Upon looking through the car window, Officer Brown noticed there was only a single key on the dashboard—the key in the ignition. He had observed that drivers normally had a key ring with other keys, or a license number, or a key case attached. This circumstance, therefore, struck him as being unusual, indicating "possible criminal action"—the theft of the car. The officer asked defendant ". . . how come there was only one key . . ." Defendant replied, ". . . my key chain was busted." The officer then told defendant "to keep his hands in sight," and opened the door. At this point Officer Brown further testified: "Upon opening the door I had to step back. I looked in, and I noticed a brown wrapped paper cigarette next to his seat, between the seat and the door of the car." The officer asked the defendant what the cigarette was. Defendant replied, "I think it is a marijuana cigarette." The officer then took possession of the cigarette and placed the defendant under arrest. Chemical analysis proved that the cigarette contained marijuana.

Defendant's explanation of driving through the parking lot was that he was looking for his school friends. He did not live in that area but attended Wilmington School. He knew the eating place on the lot called Park 'n Snack but did not know

of the El Nido Café. There was no request by the police to search the car and no consent was given therefor.

Following defendant's arrest, the police had two conversations with defendant. In the first, defendant insisted that the marijuana cigarette had been planted on him. Later that same day, defendant admitted that his story about the cigarette being planted was not true. He then stated that "he had scored five joints in Los Angeles" and had paid $2.50 for the five; that he had smoked four of them the previous night and must have dropped this one because he got pretty high.

In seeking a reversal defendant's basic contention is that the cigarette was obtained by an illegal search and therefore was not admissible in evidence. The position of the People is that the police, under the circumstances here disclosed, were justified in stopping defendant and interrogating him, and that there was no search, and therefore the cigarette in question was properly received in evidence and the conviction must be sustained. We have concluded that the position of the People is correct.

 The reasonableness of the action of police officers must be determined on the basis of the facts and circumstances as they appeared to the officers at the time they were required to act. (*People* v. *Evans,* 175 Cal.App.2d 274, 276 [345 P.2d 947].) The courts have constantly recognized the right of the police to stop persons and to question them where the circumstances appear to warrant such action. While each case must be decided upon its own facts, the results reached in somewhat similar factual situations are helpful. In *People* v. *One 1958 Chevrolet,* 179 Cal.App.2d 604 [4 Cal.Rptr. 128], the police were checking out an area in which school children previously had been molested. While thus engaged at about 2:10 p. m. they observed two persons in a Chevrolet automobile which was parked on Eastman Avenue about 20 yards from the exit of an underpass. The parked car was facing south. The officers were driving north; they pulled up by the side of the parked car and stopped. The officers did not know the occupants of the parked car and did not have any prior information regarding them or the parked car. In discussing the right of the police to question the persons in the car, the court stated (p. 610) : "Under the circumstances here, particularly in view of the duties assigned to the officers and the location of the Chevrolet near the exit of the underpass, the officers were justified in questioning the two persons relative to their identity and their purpose in being there at that

time.'' ■■ Similarly, in the instant case, the circumstances of these school boys driving into the parking lot of a place that had a bad reputation for narcotics at a time when three known peddlers were inside, driving out without stopping at a time when a patrol car was in the lot, and then taking an unusually irregular route as if to ''shake'' any car that might be ''tailing'' them, justified the officers in stopping defendant's car to make further inquiry as to why defendant came to that place at that time of day, drove in and left without stopping, and why he had since taken such an irregular route. The propriety of the officer's desire to interrogate the defendant becomes even more apparent when it is appreciated that he was a minor who had come into a narcotic environment, and had suddenly left by a devious route, and that special efforts were being made to stamp out and prevent the use of narcotics by minors. Certainly an inquiry by the police was here justified. ■■ In this connection, however, it should be pointed out that whether an officer has a right to stop a car and interrogate the occupants is a question quite separate from whether he has a right to stop a car, make an arrest, and conduct a search. The strength of the information required for an officer to engage in questioning is necessarily much less than it would be to arrest and search. (*People* v. *King*, 175 Cal.App.2d 386, 390 [346 P.2d 235].)

■■ Upon reaching the car, Officer Brown noticed that the ignition key was unattached to a key case or other keys, a circumstance that seemed unusual to him, and suggested the possibility that the car had been stolen. Adding this fact to the previous circumstances, Officer Brown was thoroughly justified in making further investigation. Having established that there was sufficient cause to investigate, he was justified in taking precautionary measures, especially since there were two other young men in the car. This he did by telling defendant to keep his hands in sight, and by opening the car door.*

■■ Where the circumstances appear to warrant it, the police are entitled to ask the person in a car to get out, and where it seems appropriate the police are justified in taking precautionary measures by way of searching for weapons to insure their own safety. (*People* v. *Martin*, 46 Cal.2d 106, 108 [293

---

*While there is testimony which indicates that the officer opened the door for the purpose of checking on the ownership of the car, this does not preclude the inference that protection was a substantial factor underlying the officer's act. This is apparent from the fact that he admonished defendant to keep his hands in sight immediately preceding the opening of the door.

P.2d 52].) The trial judge appears to have concluded that the mere opening of the car door by the officer was reasonable under the circumstances "to protect himself." This conclusion seems justified, particularly in view of the numerous attacks upon law enforcement officers seeking to interrogate occupants of automobiles. ▮ Once the door was opened, Officer Brown noticed the cigarette lying in open view. To see that which is in plain sight is not a search. (*People* v. *Murphy,* 173 Cal.App.2d 367, 377 [343 P.2d 273] ; *People* v. *Spicer,* 163 Cal.App.2d 678 [329 P.2d 917].) Therefore the cigarette was legally obtained and was properly admitted in evidence.

The judgment (order granting probation) is affirmed.

McMurray, J., pro tem.,* concurred.

Ashburn, J., dissented.

*Assigned by Chairman of Judicial Council.