[Crim. No. 7934. Second Dist., Div. Three. May 25, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE McLAINE, Defendant and Appellant.

George McLaine, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—In a trial by jury, the appellant McLaine and his codefendant Dillard were found to be guilty of the crime of robbery in the first degree. A third defendant, Dennis, was acquitted. McLaine's appeal is from the judgment and from the order denying his motion for a new trial.

There was evidence of the following facts. Mack D. Gordon, Jr., was the proprietor of a small record shop at 1463 West Washington Boulevard in the city of Los Angeles. At about 9 o'clock on the evening of April 4, 1961, McLaine and Dillard entered the shop together. McLaine asked for particular records which Gordon did not have in stock. A record on a phonograph behind the counter was "scratching" and Gordon turned his attention to the adjustment of the machine. When he finished his work and looked up, Dillard was pointing a gun at him. Dillard said, "Give me your wallet." McLaine was standing in the doorway. Gordon gave his wallet to Dillard who then directed Gordon to get under a desk. Gordon complied and remained thereunder for a period of time. He then called the police. When the officers arrived he gave them "certain descriptions." One of the two men was wearing a brown hat but Gordon could not remember whether it was Dillard or McLaine.

About five minutes after 10 o'clock on the same evening Officers Petteys and Holton saw a 1950 Dodge automobile going in an easterly direction on San Vicente at a point about three miles westerly of the scene of the robbery. About an hour before they had received a report by radio of a robbery on Washington Boulevard. The broadcast included a description of the persons who had committed the offense. In the automobile were three Negro men. One of them was wearing a brown hat which fact was consistent with the description given in the broadcast. Part of Officer Petteys' testimony was as follows: "Q. And what if anything attracted your attention to that car? . . . THE WITNESS: The hour of the night, the location and the car being real old and just three people in it; to begin with, colored people. . . . Q. . . . would you describe the person in the back seat with the brown hat; did he make any movements as you followed the car? A. From Genessee to Hauser, which is about five blocks, when we pulled in behind this Dodge, the man in the back seat first turned around and our red light was not on, but it is facing forward. . . . But during these five blocks, defendant Dennis who is in the back seat, he would turn—he turned and looked

at us. Then he turned forward and he would turn around again, probably four times before we finally turned onto Hauser and stopped them. . . . The broadcast which was about an hour earlier was in general, two male colored in their twenties not too tall and not too heavy but the two items that stuck in my mind . . . was . . . the brown hat worn by one man and a black pair of pants worn by another.''

After the car which the officers were following had turned onto Hauser it was brought to a stop in response to the red light on the officer's vehicle. Dillard, who had been driving, alighted from the car and went toward the officers. He wore black pants. Officer Petteys questioned Dillard as to his identity, the ownership of the automobile, and as to where he had been. Officer Holton interrogated McLaine on the sidewalk. Dennis, who was wearing the brown hat, remained in the back seat of the car. Then Officer Petteys went over to the passenger side of the Dodge automobile. The front door was open. Using his flashlight, the officer found a small piece of white paper on the floor in front of the seat. He picked up the paper and observed that written on it was an address in the 1400 block on West Washington.[1] After he showed the paper to Officer Holton, he returned to the car and directed the light from his flashlight toward the front seat. Protruding from the seat was what appeared to be a pistol. It proved to be a .22 caliber pistol. It had one bullet in it. After the gun was found, handcuffs were put on Dillard and McLaine and they were put in the police car.

On behalf of the appellant McLaine it was argued in the trial court that the officers had illegally stopped the automobile and that the evidence with respect to what was found therein was inadmissible. The trial court determined that such contention was without merit. The first question to be considered on this appeal is whether there was error in such determination.

 Whether an officer has a right to stop an automobile and interrogate the occupants is a question distinct from whether he has a right to stop a vehicle, make an arrest, and conduct a search. Much less information is required to justify the actions of an officer in engaging in such interrogation than is necessary to warrant an arrest and search.

---

[1]Mr. Gordon testified that this paper was in his wallet when it was taken. In size the paper was about 6¼ by 3¾ inches. It was a sales slip for records and, in the usual place for the designation of the customer, it bore the name ''Mack Gordon'' and the address ''1463 W. Washington Blvd.''

(*People* v. *Davis,* 188 Cal.App.2d 718, 722 [10 Cal.Rptr. 610] ; *People* v. *King,* 175 Cal.App.2d 386, 390 [346 P.2d 235].)
█ The applicable law is stated in *People* v. *Ellsworth,* 190 Cal.App.2d 844 [12 Cal.Rptr. 433], at pages 846-847, as follows: ''The courts of this state consistently have adhered to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary in the discharge of his duties [citations]. . . . The right to interrogate, under the circumstances noted, includes the right to stop the automobile in which the person to be interrogated is riding. [Citations.] Such a procedure does not constitute an arrest even though the person interrogated may be detained momentarily [citations], and the existence of facts constituting probable cause to justify an arrest is not a condition precedent to such an investigation. [Citation.] . . . █ The reasonableness of an officer's decision to make an investigation is determined in the light of the facts and circumstances as they appeared to him at the time he was required to act. [Citations.]''
█ In the present case, in view of the report received by the officers by radio as to the robbery which had occurred earlier that evening some three miles away, which information included a description of the participants, and in view of the actions of one of the occupants of the automobile in turning around several times in apparent observation of the police car, the officers were warranted in stopping the automobile for the purpose of interrogating the occupants. (Cf. *People* v. *Lewis,* 186 Cal.App.2d 585, 602 [9 Cal.Rptr. 263] ; *People* v. *King, supra,* 175 Cal.App.2d 386, 390; *People* v. *Carnes,* 173 Cal. App.2d 559, 565-566 [343 P.2d 626] ; *People* v. *Borbon,* 146 Cal.App.2d 315, 319 [303 P.2d 560].) The stopping of the car and the asking of reasonable questions did not, under the circumstances herein disclosed, constitute an arrest. (See *People* v. *King, supra,* 175 Cal.App.2d 386, 390.)
█ As has been noted, a pistol was found in the automobile. Although the record does not clearly disclose the position of the officer when he observed it, it was a reasonable inference that the protruding part of that pistol was visible through the open door when the officer directed the light from his flashlight upon it.[2] No search was involved with

---

[2]The officer's narration of the discovery was that, after showing the piece of paper to his fellow officer, he went ''back to the front portion

respect to the gun because to see that which is in plain sight does not constitute a search. (See *People* v. *Murphy*, 173 Cal. App.2d 367, 377 [343 P.2d 273]; cf. *People* v. *Davis, supra,* 188 Cal.App.2d 718, 723; *People* v. *Carnes, supra,* 173 Cal. App.2d 559, 566.) ■ Upon such discovery, the arrest of the defendants was clearly justified because the officers were presented with such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the defendants were guilty of the crime of robbery. (See *People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

■ After the finding of the gun, the officers would have been justified in making a further investigation of the contents of the car. (See *People* v. *Murphy, supra,* 173 Cal. App.2d 367, 377.) It is probable that they would have discovered the paper containing the address in the 1400 block on West Washington if Officer Petteys had not theretofore picked it up. But assuming that, in view of the innocuous appearance of the paper as it rested on the floorboard of the car, the officer had no right to seize it at the moment he did, its subsequent reception in evidence does not, in and of itself, constitute reversible error. ■ As said in *People* v. *Herman*, 163 Cal.App.2d 821 [329 P.2d 989], at page 827: "The introduction of illegally secured evidence does not *per se* require a reversal—it depends upon whether such evidence was prejudicial. (*People* v. *Valenti*, 49 Cal.2d 199 [316 P.2d 633]; *People* v. *Tarantino*, 45 Cal.2d 590 [290 P.2d 505]; *People* v. *Felli*, 156 Cal.App.2d 123 [318 P.2d 840].)"

■ A miscarriage of justice should be declared only when the court, after an examination of the entire case, including the evidence, is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) ■ In view of the positive identification by Mr. Gordon of the appellant as one of the men who committed the robbery, the admission of such paper in evidence, even if erroneous, cannot be said to have been prejudicial unless there is merit in the appellant's attack upon such evidence of identity, a matter to which we now turn.

---

of this automobile," and that he shone his "light and just protruding from the seat is [was] the grips which appear[ed] to be the end of the gun and is [was] the end of that pistol, which was lying underneath the seat."

In the course of the cross-examination of the witness Gordon by counsel for the appellant, inquiry was made as to the description Gordon had given to the police of the two men who had entered his shop. He was also asked as to the circumstances of his identification of the men at a police lineup. Part of the testimony was: "Q. . . . Which is the larger of the two weightwise? A. Well, that night it appeared to be that Mr. McLaine weighed the more. . . . Q. All right now, as far as taller, which one is the larger? A. Mr. Dillard." The witness' attention was then called to his testimony at the preliminary hearing, part of which was as follows: ". . . and while I was adjusting the phonograph and the record, the larger guy walked to the door. . . . Q. Are you indicating Mr. McLaine? A. Yes, Mr. McLaine." He explained that by "larger guy," he supposed that he meant "weight." He then testified that he thought that Mr. McLaine weighed "160, 165" pounds and that Dillard weighed "possibly the same," but that it "appears to me" that McLaine was larger on the night of the robbery. He testified that he told the officers that the weapon used was a .38 caliber gun, but he said that he could not say that he knew the difference between a .22 caliber and a .38 caliber pistol. The witness further testified: "Q. By MR. BUSBY [counsel for defendant McLaine] : And the events and the circumstances that took place on April the 4th, about that evening, the circumstances and the identification and that sort of thing is a bit hazy in your mind, is it not? A. The clothing they were wearing, yes, but not the people. I know the faces. Q. You know the faces? A. Right."

The record does not disclose any substantial basis upon which to attack on this appeal the accuracy of Mr. Gordon's identification of the two men. It was for the jury as the trier of the facts to determine the credibility of the witness Gordon and to determine the weight that should be given to his testimony.[3] (*People* v. *Alonzo,* 158 Cal.App.2d 45, 47 [322 P.2d 42].) The applicable law is stated in *People* v. *Hornes,* 168 Cal.App.2d 314 [335 P.2d 756], at pages 318-319, as follows: "However, it is well settled that the testimony of a

---

[3]The appellant also attacks the credibility of Gordon by asserting that Gordon stated at the preliminary examination that the two men entered his shop about 6 o'clock p. m. whereas at the trial he stated that they entered about 9 o'clock p. m. However, Gordon testified that the transcript of the preliminary hearing did not correctly set forth his testimony at that point. Moreover, it was brought out at the trial that at another point in the preliminary hearing Gordon fixed the time as having been about 9 o'clock in the evening.

robbery victim if believed by the trier of facts, is sufficient of itself to warrant a conviction, and that no corroborative evidence is required. (*People* v. *Thompson,* 147 Cal.App.2d 543, 546, 547 [305 P.2d 274] ). Primarily, the identity of the accused as the perpetrator of a robbery is a question of fact for determination of the trial court. And appellants' argument that the testimony of the prosecuting witness was in some respects contradictory is not sufficient to warrant a reversal (*People* v. *Hightower,* 40 Cal.App.2d 102, 106 [104 P.2d 378] ). Unless the evidence of identification can be strictured as inherently improbable or incredible as a matter of law, the finding of the trial court or jury cannot be disturbed and an appellate tribunal cannot substitute its judgment for that of the court below (*People* v. *McNeal,* 123 Cal.App.2d 222, 224 [266 P.2d 529] )." (See also *People* v. *Thompson,* 147 Cal.App.2d 543, 546-547 [305 P.2d 274].)

The appellant contends that it was essential that he be indicted by a grand jury and that it was error to proceed by information. The point has no merit. Due process of law does not require an indictment by a grand jury. (*People* v. *Douglas,* 187 Cal.App.2d 802, 805 [10 Cal.Rptr. 188] ; *People* v. *Barreras,* 181 Cal.App.2d 609, 615 [5 Cal.Rptr. 454] ; *People* v. *Thwaits,* 101 Cal.App.2d 674, 677 [226 P.2d 58].)

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Files, J., concurred.