[Crim. No. 9169.    Second Dist., Div. One.    July 28, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. ALBERT VA-
LENCIA MARTINEZ, Defendant and Respondent.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney (Los Angeles County), Harry Wood, Robert J. Lord and Harry Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Paul Augustine, Jr., under appointment by the District Court of Appeal, for Defendant and Respondent.

WOOD, P. J.—By information filed by the District Attorney of Los Angeles County the defendant was accused of the crime of violation of section 23105 of the Vehicle Code, a felony, in that he unlawfully drove a vehicle upon a highway while addicted to the use and under the influence of narcotic drugs.

Defendant made a motion under section 995 of the Penal Code to set aside the information "on the basis of illegal arrest." The motion was granted.

The People appeal from the order setting aside the information.

Section 995 provides, in part, that an information must be set aside, upon defendant's motion, if before the filing of the information the defendant had not been legally committed by magistrate; or if the defendant had been committed without reasonable or probable cause.

The transcript of the preliminary examination shows in substance as follows:

Deputy Sheriff Miller testified to the following effect: On March 4, 1963, about 4 p.m., while he was driving a police car he saw the defendant driving a 1956 Buick automobile south on Holmes Avenue near 55th Street in Los Angeles. A woman was in the right front seat of the Buick. Two other officers were in the police car with Officer Miller, and two officers were in another police car that was following the Miller car. The two police cars followed the defendant as he continued southbound on Holmes Avenue from 55th Street. When the three cars were near 68th Street, Officer Miller drove beside the defendant's car, and then the two officers who were riding with Officer Miller identified themselves by displaying

their badges outside the car windows, and they asked the defendant to pull over to the curb, and they stated further that they would like to talk to him. Immediately thereafter, the defendant put his hand to his mouth, and it seemed to Officer Miller that the defendant swallowed something, but the officer did not see any object in defendant's hand or mouth. The defendant parked his car just north of 70th Street on Holmes Avenue. The Miller car stopped on the left side of defendant's parked car, and the other police car stopped behind defendant's car. Then the five officers went to defendant's car. Officer Miller asked defendant his name, and he replied, "Albert Martinez." The officer (witness) asked defendant if he was ever known as "Foo Man Chu." He replied, "Yes." Foo Man Chu was known to the officer as a "narcotic violator." The officer asked defendant to get out of the car and to put his hands on the car roof. The officer made a "pat-down" search of defendant, outside his clothing, to determine whether there was any weapon on him. After this search the officer asked him whether he had used narcotics, and also stated, "I would like to look at your arms; will you roll your sleeves up." Thereupon he rolled up his sleeves, and the officer observed four fresh puncture wounds on his right arm, and five fresh wounds on his left arm.

The officer observed that defendant's eyes were pinpointed, his mouth was dry, his eyelids were "droopy," and the whites of his eyes had a grayish, discolored effect. In the opinion of the officer the defendant was under the influence of narcotics. The officer arrested him for violation of narcotic laws. The defendant had not committed any driving violation in the officer's presence.

In response to questions on cross-examination, Officer Miller testified that the officers did not have a search warrant or a warrant of arrest.

On redirect examination, the deputy district attorney asked Officer Miller to relate the circumstances leading up to the arrest. In response thereto, he testified further, as follows: During the course of an investigation of a suspected heroin dealer on the day of this arrest, a deputy sheriff of the narcotic detail was "conducting a surveillance of" a single residence at 5541 Duarte Street. That place had been named by three reliable informants as a place of narcotic activity. A deputy sheriff, who was watching this place, had radio equipment with him. He radioed to Officer Miller that a brown

1956 Buick had approached the location, parked in the street in a southbound direction, a female had remained in the car, and the driver who was a Mexican man had entered the house, and within three minutes he had returned to the Buick and driven south on Duarte, turned east on 56th Street, and then turned south onto Holmes Avenue. It was at this place (56th and Holmes) that Officer Miller first saw defendant, and from this place the officers followed him to the place of arrest.

Upon further cross-examination, counsel for defendant asked if any of the three informants had gone with the witness to the location. When he replied that one of them had "driven" the officers to the vicinity and pointed out the place, counsel asked the name of that informant. He replied that his name was Bobby Camerino. He testified further that this informant had given information which had resulted in several arrests, and the witness believed that one or two convictions resulted therefrom. Defense counsel did not ask for the name of either of the other informants, but he referred to them as A and B. The witness testified further that A had given information resulting in an arrest and conviction; that B's information lead to an arrest but the witness was not certain that it resulted in a conviction.

With reference to Officer Miller's qualifications to give an opinion as to whether a person was under the influence of a narcotic, he testified that he had been a police officer for Los Angeles County for four years, and that he had made numerous narcotic arrests of persons who had been prosecuted successfully.

In the present case Officer Miller testified that prior to the date of this arrest he "had observed traffic to and from this location" at 5541 Duarte Street, and he had made two arrests from that place; that one of the arrests resulted in a charge of parole violation, and the other one resulted in a release of the person for lack of evidence.

■ "[C]ircumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. . . . Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search." (*People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658].) ■ In *People* v. *King,* 175 Cal.App.2d 386, 390 [346 P.2d 235], it was said: "Whether an officer has a right to stop a car and interrogate

the occupant is an issue quite separate from whether he has a right to stop the car and to arrest the occupant and conduct a search. The strength of the information the officer requires to engage in questioning is necessarily much less than it would be to arrest and search.''

Some cases, cited by appellant (People), wherein it has been held proper for officers, during an investigation, to stop a suspect, seek an interview with him, and interrogate him are: *People* v. *Sanchez,* 191 Cal.App.2d 783, 787 [12 Cal. Rptr. 906]; *People* v. *Anushevitz,* 183 Cal.App.2d 752 [6 Cal.Rptr. 785]; *People* v. *McLaine,* 204 Cal.App.2d 96 [22 Cal.Rptr. 72]; and *People* v. *Davis,* 188 Cal.App.2d 718 [10 Cal.Rptr. 610].

Respondent (defendant) asserts that the stopping of defendant was unlawful; that the arrest was without probable cause; and that the officers had a pre-existing intent to arrest the defendant and conduct a search. He cites cases wherein it was held that, under the facts of the respective cases, a search or arrest was not justified. One of the cases cited (*People* v. *Cowman,* 223 Cal.App.2d 109, 111 [35 Cal. Rptr. 528], distinguishes between a situation where the stopping of a car is for the purpose of interrogating the driver and a situation where the officers had an initial intent to arrest and search (which latter course was held to be illegal).

In the *Cowman* case, *supra,* it was said (p. 117): ''The rationale of all these decisions is that an officer of the law, employed to maintain the peace and to prevent crime, as well as to apprehend criminals after the fact, has both the right and the duty to make reasonable investigation of all suspicious activities even though the nature thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects.''

In the present case the house which defendant had visited for approximately three minutes was under surveillance by a deputy sheriff because the house has been named by three reliable informants as being a place of narcotic activity. That deputy, who was at the house, communicated by radio with Officer Miller, who was waiting at 55th Street and Holmes Avenue, and stated that a Mexican man who had been in the house about three minutes had left the house, entered a 1956 Buick in which there was a woman, and had proceeded south on Duarte Street. When Officer Miller approached the stopped Buick, the defendant admitted, in re-

sponse to a question by the officer, that he was known as "Foo Man Chu." The person so referred to was known to the officer as a "narcotic violator." After observing the defendant, and particularly his eyes and mouth, as hereinabove described, the officer formed the opinion that defendant was under the influence of narcotics. The officer testified that one of the reasons he stopped the Buick was that he had information that the driver had gone into the house which was under surveillance, and the other reason was to continue the investigation. The committing magistrate could reasonably have concluded from the evidence that the officers stopped the defendant for the purpose of interviewing and interrogating him; that they were justified in stopping him; that there was probable cause for arresting him; that the defendant voluntarily exhibited the fresh puncture marks on his arms; and that there was reasonable cause to hold the defendant for trial.

The court erred in granting the motion to set aside the information.

The order is reversed.

Fourt, J., and Lillie, J., concurred.